PETER FLANAGAN, an Infant, by SCHUYLER C. CARLTON, his Guardian ad Litem, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Personal injuries — duty of an employer to furnish a safe place for his employees — expert evidence as to the operation of gates at railroad crossings inadmissible.*

The duty rests upon an employer to provide a reasonably safe place for his employees to work in.

In an action brought to recover damages arising from personal injuries resulting from the defendant's alleged negligence in failing to provide a safe place for its employee to work in while engaged in operating gates on a railroad track at a street crossing, evidence of expert witnesses, as to whether they considered that the gates could be operated in a safe manner and with safety to the operator, is inadmissible in evidence as that is the question to be decided by the jury, and the plaintiff is not entitled to have it determined for them by experts. If such testimony be admitted in evidence against the objection and exception of the defendant, a judgment rendered in favor of the plaintiff will be reversed on appeal.

To make expert evidence proper, the subject under consideration must be one relating to science or skill or one of which observation and experience have given the opportunity and means of knowledge which exist in reason rather than in descriptive facts, and, therefore, cannot be intelligently communicated to others not familiar with the subject, so as to possess them with a full understanding of it.

APPEAL by the defendant, The New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of January, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 9th day of January, 1894, denying the defendant's motion for a new trial.

*Frederick B. Jennings,* for the appellant.

*Howard O. Wood* and *Frederick T. Hill,* for the respondent.

PARKER, J.:

We think this judgment must be reversed, because the court received against the defendant's objection and exception the opinions of alleged experts upon the leading issue to be determined by the jury, in violation of the rule that to make such evidence proper the subject must be one of science or skill or one of which observation and experience have given the opportunity and means of knowledge which exist in reason rather than descriptive facts, and, therefore, cannot be intelligently communicated to others not familiar with the subject, so as to possess them with a full understanding of it.

Plaintiff entered the employment of the defendant on the 18th of December, 1890, to act in the capacity of gateman, at the Grove street crossing, Jersey City. Grove street is crossed by five tracks of the defendant running parallel with one another, and at right angles to Grove street. For the protection of the public at that crossing, gate poles, capable of being raised and lowered, were situated on either side of the crossing. They were raised or lowered by means of handles projecting from upright posts located between tracks Nos. 3 and 4. At these posts the plaintiff, as gateman, was stationed at the time of the injury, which was about half-past four on the morning of December twenty-first, three days after his employment.

At that time he observed a milk train, of twenty or more cars, running at the rate of about twelve miles an hour, going west on track No. 3, and he commenced to lower the gates, turning the handle of the east post first and then the handle of the west one. The gates being lowered, he stood on one side of the posts, as he had

been instructed to do, with his left hand on the handle of the left post and facing track No. 3.

This position he took as the milk train was about reaching him, and, according to his testimony, he remained in that position, neither turning nor stepping forward or backward, when suddenly, and before the milk train had passed, and without any previous warning, he felt a sudden blow on the back of his head, and he fell forward upon one of the rails of track No. 3 under the moving cars of the milk train, his left arm being crushed beneath the wheels, necessitating amputation. At the time of the accident, an engine, without any cars attached, was going west on track No. 4, and, according to the testimony of the men on it, it was opposite the eighth car on the milk train, which was running somewhat faster than the engine. It is the claim of the plaintiff that he was struck by some part of the light engine, and the evidence is of such a character as to warrant the finding that such was the fact. He contends that the defendant failed to discharge its duty towards him, as an employee, in that it did not use reasonable care and prudence in providing a safe place in which to do the work assigned him. The facts, other than those already referred to, offered for the purpose of establishing his contention, are that the entire space between tracks Nos. 3 and 4, where plaintiff was stationed at the post, was eight feet three and five-eighths inches, and the distance between the handles projecting from the posts and track No. 4, upon which the light engine ran, was three feet four and three-eighths inches, and the overlap of freight cars, on a standard gauge road, is from one foot nine inches to two feet, and of engines about the same.

The engine that struck him belonged to the heaviest class and had an overlap of two feet, thus leaving an average space of sixteen and three-eighths inches between plaintiff and the engine passing at his back. A witness, with considerable railroad experience, testified to the effect of rapidly-passing trains upon a person in close proximity and unaccustomed to the sensation. Another witness suggested that a gateman would be more secure if he should push himself between the posts after the gates had been lowered; but there was some evidence that this only could be done when the handles happened to be hanging exactly right, which was not always the case.

Maps descriptive of the *locus in quo* and photographs were put in evidence, together with testimony, to the effect that it was entirely feasible to have provided a place for a gateman to raise and lower the gates entirely outside of the railroad tracks.

We have thus called attention to some of the leading facts bearing upon the question whether the defendant had omitted to discharge the duty resting upon it of using proper care and caution in providing a reasonably safe place for the plaintiff to work. And we think the evidence was of such a character as to present a question for the jury.

But the plaintiff, after proving the facts, was not content to permit the jury, in accordance with the long-established rule, to determine from them whether or not the defendant had discharged the duty which it owed to the plaintiff, and he undertook to have that question determined for them by the opinions of experts. This was attempted to be done by means of hypothetical questions, which assumed the existence of the facts to which we have referred, and concluded, " would you consider that these gates could be so operated in a safe manner and with safety to the operator ? " This question was for the jury, and the plaintiff was not entitled to have it determined for them by experts. (*Harley* v. *B. C. M. Co.*, 142 N. Y. 31; *Schneider* v. *The Second Ave. R. R. Co.*, 133 id. 583; *Roberts* v. *N. Y. E. R. R. Co.*, 128 id. 455 ; *Van Wycklen* v. *City of Brooklyn*, 118 id. 424.)

The ruling of the court in receiving the evidence, against the objection and exception of the defendant, constitutes error for which the judgment must be reversed.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment reversed, new trial granted, costs to appellant to abide event.