(91 App. Div. 80.)

### WINTERS v. NAUGHTON et al.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. MASTER AND SERVANT—APPLIANCES—SAFE PLACE TO WORK—QUESTION FOR JURY.

Where the few feet of earth at the surface of a trench 30 feet deep were braced by planks along the sides and braces between them reaching across the trench, and on trial for an injury resulting from the falling of a brace the construction was set out in detail, it was for the jury to say whether a reasonably safe place to work had been provided.

2. SAME—OPINION EVIDENCE.

Opinions of witnesses that sheathing to prevent earth from falling into a trench where men were working was not properly constructed, that it

was not a safe place to work, and that the fall of a brace resulted from the weakening of the bank behind the sheathing, were inadmissible in evidence.

**3. SAME—CO-SERVANT—INCOMPETENCY—DISCHARGE AFTER INJURY.**
　　Where a complaint alleged that a co-servant, who put up in a trench a brace, the falling of which caused plaintiff's injury, was incompetent, but there was no evidence of his incompetency, evidence of his discharge the day after the injury occurred was inadmissible.

Appeal from Trial Term, New York County.

Action by James Winters against Bernard Naughton and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

H. Snowden Marshall, for appellants.

I. Henry Harris, for respondent.

McLAUGHLIN, J. Action to recover damages for personal injuries alleged to have been sustained by reason of defendants' negligence. The plaintiff had a recovery, and defendants appeal.

At the time the plaintiff was injured he was at work, with other employés of the defendants, in a trench about 60 feet long, 30 feet deep, and 10 to 15 feet wide, the first few feet of which was of earth and the balance rock. The earth was supported by a sheathing which consisted of perpendicular planks extending from the surface to the rock, to which were fastened horizontal timbers called "breast-pieces," and between which on each side of the trench were placed timbers called "braces." One of the braces became detached, fell, and struck the plaintiff, inflicting the injuries of which he complains. At the trial the testimony of the parties was directed mainly towards showing the cause of the fall of the brace; the plaintiff contending, in substance, that the sheathing was improperly constructed, and the brace improperly supported; that by reason of such improper construction the sheathing receded, and thereby caused the brace to fall. He also contended that prior to the accident defendants' superintendent had been informed that the brace was liable to fall. The defendants, on the other hand, contended that the construction in the first instance was proper, that the brace was properly supported, and that there were sufficient materials on the ground to make the sheathing and brace safe if they became unsafe by reason of the sheathing receding. The facts connected with the fall of the brace were not complicated, nor was the sheathing of such a character that a person of ordinary intelligence could not comprehend the situation after the facts relating to its construction had been given. Several witnesses described in detail the manner of its construction, and it was for the jury to say, upon such testimony, whether the defendants had performed the duty they owed the plaintiff, viz., to furnish him a reasonably safe place in which to work. This, of course, depended upon the fact whether they used due care in the construction of the sheathing in the first instance, and thereafter properly inspected the same as the work progressed. Not-

¶ 3. See Master and Servant, vol. 34, Cent. Dig. § 929.

withstanding the fact that there was nothing complicated about the construction of. the sheathing, including the brace and the way in which it was supported, witnesses were permitted to give their opinion as to whether it was properly constructed, as well as whether the trench was a reasonably safe place in which to work. Thus the witness Murphy was permitted to state that, in his opinion, the sheathing was not "properly constructed"; the witness Sheehan that under the circumstances detailed "it was not very safe for a man to work there"; and the witness Hayes that, in his opinion, the cause of the fall of the brace was "the weakening of the bank behind the sheathing." Objections were made by the defendants to these questions, upon the ground, among others, that they were incompetent, and not the subject of expert testimony. The objections were overruled, and exceptions taken. Under the rule laid down in Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608, the objections should have been sustained. The witnesses were asked, in substance, whether the sheathing was properly constructed, and whether it was a proper place in which to work. This was an issue in the case, which the jury could readily determine upon the statement of all the facts concerning the construction of the sheathing as well as the place in which the plaintiff was when he was injured. No special training or experience was required to enable one to draw a correct conclusion as to these matters when all of the facts bearing upon them had been given, and for this reason the opinion evidence was improper. Kelpy v. Triest, 73 App. Div. 597, 76 N. Y. Supp. 742; Dittman v. Edison Electric Illuminating Co., 87 App. Div. 68, 83 N. Y. Supp. 1078. In the case last cited the plaintiff sustained an injury by the breaking of a leather belt. A judgment in his favor was reversed because a witness was permitted to state that a reasonable inspection of the belt by a competent person ought to have disclosed the fact that it was unsafe; the court saying:

"On a disclosure of the facts it needed no expert knowledge to determine what would be a reasonable inspection, what such inspection would disclose, or, if it disclosed the fact that the belt was worn out and rotten, that it was an unsafe appliance to use in the operation of machinery."

So here, after the witness had stated the nature and extent of the excavation, had detailed the method in which the sheathing was constructed, the jury could determine just as correctly as an expert could whether the construction was proper, and whether the place in which the plaintiff was working was a reasonably safe one.

The judgment must also be reversed for another reason. The complaint alleged that one of plaintiff's co-servants—the one who constructed the sheathing—was incompetent, but upon the trial no evidence was given tending to establish this fact. The plaintiff, however, was permitted to show, against defendants' objection and exception, that this person was discharged the day following the accident. This was error. The reason which induced defendants to discharge such person was not an issue to be tried, nor did the fact of his discharge following the accident tend to show the defendants were negligent any more than his retention would have tended to show their freedom from negligence.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.

INGRAHAM, J. I concur with Mr. Justice McLAUGHLIN for a reversal of this judgment. As the first ground of reversal I think the question asked the witness Murphy, who was an expert called by the plaintiff, that, "Under the circumstances that I have detailed to you, was the structure built there safe for a man to work?" was clearly incompetent. That was specifically objected to upon the ground that it was not subject for expert testimony, calling on the witness to pass on the very facts that ought to be submitted to the jury. The objection was overruled, and the plaintiff excepted, and the witness answered that it was not. I think this question was incompetent, and not within the principle established by Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877. The questions which were sustained in that case were questions by which an expert was asked to state the proper method of construction where it was alleged that in consequence of an improper method of construction the place in which the plaintiff was put to work was rendered unsafe, and "How, in your opinion, ought that excavation to have been made so as to be safe for persons working in the bottom of the same?" These were said to be subjects for expert testimony, but when you ask an expert witness whether, in his opinion, the place at which the employé was put to work was a safe and proper place, the question is, in effect, whether or not the plaintiff is entitled to recover; and it has never been held that such a question was proper. As to how the excavation should have been protected is a question which an expert could answer, and the jury having this knowledge, with evidence of the method that had been adopted, must determine whether or not the place at which the plaintiff was directed to work was in fact a safe place. To allow the question which was asked in this case went further, and asked the witness, not as to the methods adopted, but as to whether the place at which the plaintiff was put to work was in fact a safe place for him to work. That question was necessarily a question of fact for the jury to be determined by them upon the evidence, and not a question upon which expert witnesses could be interrogated.

I also agree with Mr. Justice McLAUGHLIN that it is error to allow the plaintiff to show that the person who constructed the sheathing was discharged the day after the accident.