(105 App. Div. 366.)

### DOLAN v. HERRING–HALL–MARVIN SAFE CO.

(Supreme Court, Appellate Division, First Department.   June 16, 1905.)

1. MASTER AND SERVANT—PERSONAL INJURIES—SAFETY APPLIANCES—EXPERT EVIDENCE.

Where, in an action for personal injuries by the falling of certain steel plates with which plaintiff and another workman were constructing a vault, the only negligence alleged was the failure of the master to furnish certain set screws to hold the plates in place, expert testimony that the work could not be done safely without the use of a set screw was incompetent, that being a question for the jury.

2. EXPERT WITNESSES—QUALIFICATION—ORDER OF PROOF.

Before a witness can be examined as an expert, the party calling him must show him qualified, and the question of qualification should not be postponed for determination by cross-examination.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2360.]

3. SAME.

A witness who had been an ironworker for eighteen years, and who had worked five or six weeks in constructing vaults, was not qualified to testify as an expert as to whether the use of set screws to hold the steel plates composing a vault in place while the work was being done was necessary to render the work safe.

4. SAME—EVIDENCE—SUFFICIENCY.

In an action for injuries to a servant alleged to have been caused by negligence of the master in failing to furnish set screws to hold in an upright position portions of a steel vault on which plaintiff's intestate was working, evidence *held* not to show negligence on the part of the master.

Appeal from Trial Term, New York County.

Action by Mary Dolan, as administratrix of the estate of Michael Dolan, deceased, against the Herring-Hall-Marvin Safe Company. From a judgment for plaintiff and from an order denying a motion for a new trial, defendant appeals.   Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Frank V. Johnson, for appellant.
John Delahunty, for respondent.

INGRAHAM, J. The plaintiff's intestate was in the employ of the defendant engaged in constructing a safe deposit vault in a building on the corner of Sixteenth street and Union Square, in the city of New York, when, on the morning of June 4, 1903, the plaintiff's intestate, with other employés of the defendant, commenced work in the construction of this vault they found that certain steel plates had been temporarily put in place by other employés of the defendants, and the plaintiff's intestate and a fellow workman named Golding started to put in the permanent screws which were to hold these plates in place. As thus engaged, two of these plates fell over, injuring the two men at work, and the plaintiff's intestate subsequently died as a result of the injuries he then sustained. The men who were injured had been engaged in working at their vaults 11 or 12 days before the accident. The side of the vault upon which the men were at work was constructed of four upright steel plates, one of which was screwed to the doorway or entrance to the vault, and one to the opposite corner, and these two plates were formerly fastened in place. Between these two upright plates there were placed two upright plates which should have been temporarily secured by what were called "fish plates," or small pieces of steel fastened to the two corner plates and the two middle upright plates, so that the middle plates should be held in place by the fish plates. These upright plates rested on top of the angle iron at the bottom of the vault. The method of construction was to place horizontal plates inside of these vertical plates, and screw them to the upright plates which would form the side of the vault. When the plaintiff's intestate went to work on the morning of June 4th the two corner vertical plates had been securely fastened in place. The two middle vertical plates were also in place, and a horizontal plate had been placed in position at the bottom of these upright plates. The plaintiff's intestate and his associate had to put bolts through the horizontal plate into the upright plates. To do this it was necessary that the holes in the plates should coincide, and it was found necessary to move the horizontal plates. This was done by what was called drifting the horizontal plates by means of a pin which was put through the hole in the horizontal plate into the screw hole in the vertical plate and moving the horizontal plate so as to bring the two holes opposite to each other, and then to insert the screws. As they were thus attempting to drift the horizontal plate, the two middle plates fell over. The plaintiff's intestate's associate testified that when he went to work he saw the horizontal plate in place; that he did not look to see whether the upright plates had been fastened or not, but that, seeing the horizontal plate in place, he started in to screw them to the upright plates; that, so far as the witness knew, when he and the plaintiff's intestate went to work, these plates were not fastened in position at all by anything; that, if any of the fish plates had been removed before they went to work, the witness could have seen it by looking; that neither plaintiff's intestate nor the witness had anything to do with placing the upright plates in position; that other men employed by the defendant did that work; that there was a foreman

there, whose name was John Kelly, but that Kelly did not give instructions with reference to fastening these upright plates to either the witness or the deceased. One of the workmen who put these upright plates in position testified that these upright plates when put up were fastened together with thick clamps, with $1\frac{5}{8}$ screws, and that they had been put in position the day previous to the accident; that he had had a conversation with Kelly with reference to the screws that they were using in fastening these vertical plates in the vaults; this was some weeks before the accident; that in unpacking the tools they missed what were called "set screws," and he spoke to the foreman about it, when the foreman said that they would be there in a few days, but they were not there; that Kelly said he had ordered the screws. The witness was then asked, "In keeping these plates in position temporarily to have that work done safely, was it necessary to use a set screw like that?" That was objected to as immaterial and incompetent, calling for a conclusion, and calling for the witness' opinion upon a condition which was for the jury to decide upon the facts; and also upon the further ground that the witness was not qualified as an expert. This objection was overruled, and the defendant excepted, the court stating, in answer to the last objection, "I will let you bring that out on cross-examination," and the witness answered, "Yes, sir; it was." Counsel for the defendant then moved to strike out the answer, which motion was denied, and the defendant excepted. The witness was then asked whether he ever knew of plates being fastened in that kind of work except with set screws, to which the same objection was interposed, the objection overruled, and the defendant excepted; to which the witness replied, "No, sir." He was again asked, "You never knew of any other kind of screw except that to be used for that purpose?" to which there was the same objection, the same ruling and exception, and the witness answered, "No, sir." Upon cross-examination the witness testified that he had been at work constructing this vault about five weeks; that he had been engaged five or six weeks altogether in vault constructing prior to the accident; that he worked at a vault at the Broad Exchange, and for three days at the Hanover Bank, and that this was all the work that he ever did on vault construction prior to the happening of this accident—five or six weeks at the Broad Exchange and three days at the Hanover Bank.

It is quite clear that this testimony was incompetent. The only negligence which was complained of, and upon which the plaintiff sought to obtain a verdict, was the failure to furnish set screws. To allow this question in effect allowed a workman employed upon work who had set in place the plates that fell to testify that the plaintiff was entitled to a verdict. Whether or not the tools and appliances supplied by the defendant was a compliance with the duty that the master owed to his employés was the question to be determined by the jury, and the facts should have been placed before the jury, and they should have been left to determine whether the appliances furnished by the defendant were safe or otherwise. Expert testimony of this character has been uniformly condemned

as incompetent. Thus, in Harley v. B. C. M. Co., 142 N. Y. 31, 36 N. E. 813, it was said:

"Upon the trial of the action the main issue to be determined by the jury was whether the Buffalo belt fastener was suitable and safe for fastening the belt in question, and the plaintiff was permitted, against the objection of the defendant's counsel, to ask several of his witnesses their opinion as to their safety and fitness. We think these questions were objectionable. A sample of this belt fastener was produced before the jury, and also a piece of belt showing how the fastener was used. Its size and mode of use were apparent to the jury. It was competent for the plaintiff to prove the strain to which it would be subjected, its liability to break, and all the experiences of persons who had used it; and thus all the facts could be placed before the jury, from which they could determine whether or not it was a suitable and safe belt fastener. It cannot be proper to have the issue determined by the opinions of experts, however skilled and experienced they may be. The facts should be placed before the jury, and they should be left to determine whether the belt fastener was safe or otherwise."

In Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, the opinion of experts upon such questions was held inadmissible, as it was to be the province of the jury, not of the experts, to determine the question. See, also, Winters v. Naughton, 91 App. Div. 80, 86 N. Y. Supp. 439. But assuming that expert testimony upon this subject would have been admissible, there was no evidence that the witness was an expert, so that his opinion would have been competent. Upon his direct examination he testified that he had been an ironworker for 18 years; that he had been assistant foreman on one job for Remington & Sherman in the same kind of work; that he had been working as a journeyman on that before, doing that kind of work, and had been engaged in that kind of work for years. He was not examined as to the kind of tools that he had used; whether or not these set screws were in common use or had been used on the work in which he had been engaged; nor was it shown that he had any special knowledge upon the subject which was superior to that of the jury or any other intelligent man; and when the defendant objected to his giving his opinion upon the ground that he was not qualified as an expert the ruling of the court that he would allow the defendant to bring out his qualification upon cross-examination was a reversal of the rule which requires that, before a witness can be examined as an expert, the party calling him must show him qualified, and not throw the burden upon the party objecting to the testimony of showing that he was not qualified. But it conclusively appeared upon cross-examination that the witness was not an expert. He testified that he could not say how many weeks he had been engaged in vault construction prior to the accident; that he was engaged about five weeks before the accident at the Broad Exchange by the firm of Remington & Sherman, and that that was all the work he ever did on vault construction prior to the happening of this accident. The only qualification as an expert, therefore, was that he had been engaged for five or six weeks in constructing two other vaults. There was certainly nothing in this experience to justify him in determining whether or not set screws were necessary to safely construct a vault of this character.

I am also of the opinion that upon the whole evidence the plaintiff was not entitled to a verdict. I think it quite clear that the accident was caused, not by the failure of the defendant to furnish the set screws, but by the negligence of the other employés of the defendant who placed the horizontal plate in position in failing to properly fasten the upright plates with the fish plates and screws which had been furnished for that purpose. The evidence is that when these upright plates had been placed in position they were fastened together with the fish plates screwed into the upright plates. For some reason not disclosed, these fish plates had become unscrewed, and the two middle upright plates were left without sufficient support. When the plaintiff's intestate and his associate went to work on the morning of the day of the accident the plates were not securely fastened, but for that it does not appear that the master was responsible. There is no evidence that a foreman was present at the time, that he directed the plaintiff or his associate to go to work at these particular plates without examining to see whether the upright plates were securely fastened; but these two men, seeing the horizontal plate in position, commenced to drift it so as to enable them to insert the screws that were to fasten the plates together, and while thus engaged, in consequence of the neglect of some one to properly secure the upright plates, they fell, and caused the injury. The negligence was that of a detail of the work by the men who put these plates in place, which would be the negligence of a fellow workman, for which the master was not responsible. There is not the slightest reason to suppose that, if these fish plates had been properly fastened to the upright plates, the accident would have happened; and, no matter how many set screws had been furnished by the defendant, if they had not been used, or if after they had been put in place they had been taken out, the accident would not have been avoided. It was not, therefore, the negligence of the defendant in not furnishing set screws, but the negligence of the men who put these plates in position in not properly screwing them, or the negligence of some other person, who, after they were properly fastened, had removed the screws which held the plates together.

The complaint alleges a violation of the employer's liability act (chapter 600, p. 1748, of the Laws of 1902), and a notice was duly served upon the defendant to comply with the provisions of that act; but it is quite clear that the proof did not bring the case within the provisions of that act. There was no evidence to show that this accident had happened by reason of the negligence of any person in the service of the employer, intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence, as provided by subdivision 2 of section 1 of that act. There was no evidence that the foreman or any superintendent had any knowledge of the condition of these plates, had given any directions about them, was present at the time of the accident and directed the men to go to work, or that the accident can be in any way attributed to any negligence of the foreman, or any person engaged in supervising or superintending the work. So far as appears, the accident

was·caused solely by the negligence of some workman either putting these upright plates in position and not securely fastening them, or in subsequently removing the screws that had fastened the fish plates, and in the plaintiff's intestate and his associate in attempting to move the plate without ascertaining when the upright plates were properly secured.

I think, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.