HALL v. NEW YORK TELEPHONE CO.   (No. 97–86.)

(Supreme Court, Appellate Division, Third Department.   May 7, 1915.)

1. MASTER AND SERVANT ☞190—FELLOW SERVANT—FOREMAN.
  A foreman in charge of men engaged in raising a telephone pole, who was himself holding the cant hooks to prevent the pole from turning, was not engaged in a detail of superintendence, but was a fellow servant, so that for his negligence, if any, in allowing the pole to turn and injure plaintiff, the company was not liable.
  [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. ☞190.]

2. EVIDENCE ☞508—EXPERT TESTIMONY—SUBJECTS.
  To warrant the admission of expert evidence, the subject must be one of science or skill, or one of which observation and experience have given the witnesses the opportunity and means of knowledge which exist in reasons rather than descriptive facts, and cannot be intelligently communicated to others not familiar with the subject, so as to give them a full understanding of it.
  [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2311; Dec. Dig. ☞508.]

3. EVIDENCE ☞507—EXPERT TESTIMONY—CONSTRUCTION OF TELEPHONE LINE.
  In a servant's action for injury from the falling of a telephone pole, which he with four other employés of defendant, under direction of a foreman, were raising, expert testimony as to how many men were usually employed in the erection of a pole of its dimensions, in the weather and temperature conditions shown, was inadmissible, since the conclusion did not require professional or scientific knowledge or skill and did not depend upon the existence of facts which were not of common knowledge.
  [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2310; Dec. Dig. ☞507.]

  Howard, J., dissenting.

Appeal from Trial Term, Warren County.

Action by George F. Hall against the New York Telephone Company. Judgment for plaintiff, motion for new trial denied, and defendant appeals. Judgment and order reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD and WOODWARD, JJ.

John A. Delehanty, of Albany, for appellant.
Cornelius E. Fitzgerald, of Glens Falls (James McPhillips, of Glens Falls, of counsel), for respondent.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LYON, J.  The plaintiff was injured in February, 1914, by the falling of a telephone pole which he and four other employés of the defendant, under the direction of defendant's foreman, were engaged in raising in connection with the building of a telephone line from Lake George to Warrensburg, N. Y.

The pole was of green chestnut and frozen, about 30 feet in length, about 9 inches through at the top, and about 14 inches through at the butt.  The morning was cold and frosty, with the temperature about 15 degrees below zero, and with 8 to 12 inches of snow on the ground, covered by a hard crust sufficiently strong to bear the weight of a man. Four of the men, including the plaintiff, were supplied with pike poles. It was the duty of two of the men, using their long pike poles, to hoist the telephone pole, and of the plaintiff and one of the other men, who were stationed on opposite sides of the pole, to steady it with their short pike poles and prevent its swaying as it was being raised. It was the duty of the fifth employé to hold a support under the pole as it was being raised.  The foreman stood at the butt of the pole, at the edge of the hole which was to receive it, holding the handle of a cant hook in each hand with which to prevent the pole turning either way as it was being hoisted.  When the pole had been raised to an angle of about 45 degrees, the foreman noticed that it was careening towards the north or away from the plaintiff.  He thereupon directed one of the men engaged in hoisting it to assist the man on the north side in preventing the pole swaying farther north and falling, and in pushing it south towards the plaintiff.  There were thus two men on the north side of the pole and the plaintiff alone on the south side.  The foreman also directed the plaintiff to take a position farther from the pole, in order, as the plaintiff testified, to catch and hold it as it came back. This the plaintiff testified he did, but that the additional weight placed upon his pike pole as the telephone pole came back caused the crust to break and let him through, or, as defendant's witnesses testified, to slip on the slight grade, and that, while he was holding all he could with the weight forcing him down into the snow, he noticed that the pole was turning and called to the foreman to hold it, that his cant hook was loose, but that the pole kept turning and soon released the end of the pike pole, and the telephone pole, being no longer supported on the south side, fell, striking the plaintiff and inflicting the grievous injuries, of which he complains.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit upon the ground, among others, "that the alleged act or omission on the part of Roy Farmer (the foreman), in manipulating the cant hooks which, it is claimed, resulted in the falling of the pole, was the act or omission of a fellow servant, for which the defendant is not liable."  The court denied the motion for a nonsuit, stating that he should submit the case to the jury upon two propositions, in addition to that of contributory negligence, one under the common-law count, and the other under the Employers' Liability Act (Labor Law [Consol. Laws, c. 31] art. 14; Laws of 1909, c. 36).  At the close of the evidence, the court submitted to the jury two propositions relative to the defendant's negligence: First. Did the defendant, in the exercise of

reasonable prudence and care, perform its duty to the plaintiff in furnishing a sufficient number of men to raise the pole with safety? Second. Did the pole fall through the failure of the foreman to exercise reasonable care, considering the situation and surroundings there on that day? Did the foreman loosen his hold upon the cant hooks? Did he allow the pole to turn, and, by reason of its turning, did it fall?

The defendant excepted to the denial of the motion for a nonsuit, and to the submission of the two propositions to the jury. The jury rendered a verdict in favor of the plaintiff.

[1] We think the court erred in submitting to the jury the second proposition, for the reason that the work of Farmer in holding the cant hooks was not a detail of superintendence but was the work of a fellow servant, and hence his negligence in allowing the cant hooks to slip, if negligence it was, was negligence for which the master was not liable.

In the case of Hope v. Scranton & Lehigh Coal Co., 120 App. Div. 595, 105 N. Y. Supp. 372, the rule laid down as the test of the act of superintendence was that unless the act was of itself one of direction or of oversight, tending to control others or to vary their situation or action because of his direction, it cannot fairly be said to be one in the doing of which the person intrusted with superintendence was in the exercise of superintendence. In the case of Flynn v. Boston Electric Light Co., 171 Mass. 395, 50 N. E. 937, where men were stringing an electric wire through trees, and the foreman had given directions to pull the wire, and was himself assisting in the work, and the plaintiff was injured thereby, it was held that, in the act of pulling the wire, the foreman was a coservant and not engaged in superintendence, and hence the master was not liable for negligence of the foreman in pulling the wire. In Larsen v. Brooklyn Heights Railroad Co., 134 App. Div. 679, 119 N. Y. Supp. 545, affirmed 202 N. Y. 563, 96 N. E. 1118, it was held that, in order to hold a master liable under the Employers' Liability Act for the negligence of a foreman, it must be shown, not only that the negligence was that of a person exercising superintendence, but that he was engaged in an act of superintendence at the time. In that case the plaintiff, a laborer engaged in removing old ties from an elevated railroad and replacing them with new ones, was ordered to go down into the street and carry away the old ties as they were thrown down, and the foreman himself went into the street to warn the public and to signal the man above when to drop the ties, and plaintiff was hit by a tie dropped in response to the foreman's signal. He cannot recover under the Employers' Liability Act for the injuries so received, for at the time the foreman was engaged in a mere detail of the work and not in an act of superintendence.

While a foreman is performing a part of the work which he might have assigned to any common laborer, he is not discharging the duties of a superintendent. See, also, Famborille v. Atlantic, Gulf & Pacific Co., 155 App. Div. 833, 140 N. Y. Supp. 529, affirmed 213 N. Y. 666, 107 N. E. 1077; Sherman v. Mason & Hanger Co., 162 App. Div. 327, 147 N. Y. Supp. 609. We also think that the court erred in the admission of certain testimony.

In support of his claim that the defendant was negligent in not having furnished sufficient men to erect the pole, the plaintiff called four witnesses, experienced in that line of work. Each of these witnesses testified in effect, under the objection and exception of the defendant, that the number of men usually employed in the erection in the winter time of a green chestnut pole, 30 feet long, 8 to 10 inches at the top, and 16 to 18 inches at the base, the thermometer being 12 to 15 degrees below zero, with one foot of snow on the ground, with a crust of sufficient strength to hold a man not carrying a load or subjected to any pressure, was eight. Following such testimony, the first witness was asked: "Then what do you say as to whether or not it could be erected with safety with a lesser number of men, taking it with pike poles and cant hooks?" Under defendant's objection that the testimony was incompetent and immaterial, and not the proper subject of expert testimony, and under defendant's exception, the witness answered: "Could not be erected with any safety with a less number of men." Another of the four witnesses was allowed to testify, under defendant's objection and exception, that under such circumstances, the number of men usually employed to erect a pole of those dimensions "with safety on a slight side hill" was eight men at least. Another of said witnesses, in answer to defendant's hypothetical question, said: "Under the circumstances that I have heard spoken here, I should judge with safety there should be seven men and a foreman." An exception was taken by the defendant to the refusal of the court to strike out the answer. We think the court erred in permitting the witnesses to testify as to whether the pole could be erected in safety with less than eight men.

[2] The rule as to the admissibility of expert evidence was stated in the case of Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608, as follows:

"It may be broadly stated, as a general proposition, that there are two classes of cases in which expert testimony is admissible. To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge, and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If, in such cases, the jury, with all the facts before them, can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts."

This rule was repeated in Schutz v. Union Ry. Co. of New York City, 181 N. Y. 33, 73 N. E. 491, and in the case of Welle v. Celluloid Co., 186 N. Y. 319, 79 N. E. 6.

In the former case the court said:

"The governing rule deduced from the cases permitting the opinion of witnesses is that the subject must be one of science or skill, or one of which observation and experience have given the opportunity and means of knowledge which exists in reasons rather than descriptive facts, and therefore cannot be intelligently communicated to others, not familiar with the subject, so as to possess them with a full understanding of it. Schwander v. Birge, 46 Hun. 66; Van Wycklen v. City of Brooklyn, 118 N. Y. 424, 24 N. E. 179."

There are many other cases in which this rule has been reiterated, among which are Flanagan v. N. Y. L. E. & W. R. R. Co., 83 Hun, 522, 32 N. Y. Supp. 84; Dolan v. Herring-Hall-Marvin Safe Co., 105 App. Div. 366, 94 N. Y. Supp. 241; Duke v. American Museum of Natural History, 157 App. Div. 637, 142 N. Y. Supp. 804; Pursley v. Edge Moor Bridge Works, 56 App. Div. 71, 67 N. Y. Supp. 719, affirmed 168 N. Y. 589, 60 N. E. 1119.

[3] In the case at bar the answer to the question as to how many men were required to erect the pole in safety did not require professional or scientific knowledge or skill, not within the range of ordinary training or intelligence. Neither was the conclusion to be drawn by the jury dependent upon the existence of facts which were not common knowledge and peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. Upon the other hand, the raising of the pole was a simple operation, as in the case of Ferguson v. Hubbell, 97 N. Y. 507, 49 Am. Rep. 544, the subject concerning which opinions were given was one susceptible of descriptive facts from which the jury might draw the conclusion. The circumstances and conditions attending the operation were fully developed upon the trial, and under the evidence, exclusive of the testimony of these expert witnesses, the jurors, as men of more or less practical experience, were fully capable of arriving at an intelligent conclusion as to whether, under the conditions which existed there that day, six men were a sufficient number to erect the pole with safety, and whether the exercise of reasonable prudence and care would not have required the employment of additional men. While the testimony referred to was inadmissible, perhaps we should not consider its admission of itself of sufficient importance to justify ordering a new trial of the action, as, following its introduction, the defendant called several witnesses of large practical experience in setting poles, who testified that six men were sufficient to set the pole. The whole subject was fully gone into by the defendant, and very likely the result would not have been different had the testimony of these alleged expert witnesses been excluded, nor is it certain that such testimony materially influenced the verdict, but, as a new trial of the action must be had, we have thought it advisable to call attention to this evidence in order that we may not be considered as having approved of its admission.

The charge was clear and full and was not the subject of an exception, nor followed by a request to charge. The verdict is not complained of as being excessive.

Because of the errors above stated, we think that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except HOWARD, J., who dissents.