LOUISE BEARSS, Respondent, *v.* WESTBURY HOTEL, INC., Appellant, et al., Defendant.

First Department, October 30, 1969.

*John J. Martin* of counsel (*John M. Aherne* and *Thomas J. McDonough* with him on the brief; *Jayne & McNerny,* attorneys), for appellant.

*Benjamin Heller* of counsel (*Martin H. Selman* with him on the brief; *Richard Frank,* attorney), for respondent.

*Per Curiam.* The defendant appeals from a judgment which was entered upon a verdict of a jury in an action to recover for injuries sustained by the plaintiff as she was leaving defendant's restaurant through a revolving door. We conclude that prejudicial reversible error was committed by the trial court when it allowed the plaintiff's expert to give his opinion that the door was " unsafe " and that, in any event, the verdict for the plaintiff is against the weight of the evidence.

The plaintiff testified that, on leaving the restaurant through the revolving door, she was struck in the back by the door on its being pushed by an unidentified man and that thereby she was propelled with such force that she lost her footing and fell down a step to the sidewalk. She contended that the revolving door exit was dangerous in that the door spun very rapidly on being pushed and in that there was a step down onto the sidewalk situate but about a foot from the edge of the door. But there is no evidence presented of any defect in the structure or in the condition of the door, nor was there any evidence that it failed in any respect to comply with the standards for such a door. There is no proof that the rubbers or retarding devices on the wings or bottoms of the door were worn or not properly adjusted or that other braking devices, if any, were worn or defective in any respect. She based her alleged case upon her testimony that the door would revolve easily and quickly when pushed; that when pushed it revolved or spun around two or three times without stopping. On the basis of this testimony, the plaintiff called an architect, as an expert, who had not personally inspected the door and who did not have any personal knowledge as to the speed at which it would revolve. With the expert assuming that the door " upon a slight push will revolve freely and loosely two or three revolutions before stopping of its own accord ", he was permitted over an objection by defendant's counsel to answer the question of " whether that is a safe revolving door ", and answered that he " would say it's unsafe ".

It was the province of the jury and not of expert witnesses called by the parties to determine the question of whether the revolving door was a safe means of exit for the customers from

defendant's restaurant. The case was actually submitted to the jury under a charge that liability on the part of the defendant depended upon a finding of the existence of "a dangerous or unsafe condition of the revolving door and adjoining step." On the basis of proper evidentiary data, it was for the jury to conclude whether or not the door was in a "dangerous or unsafe condition" and it was obvious error to permit the expert to express an opinion which practically decided the matter. (See *Dougherty* v. *Milliken,* 163 N. Y. 527; *Welle* v. *Celluloid Co.,* 186 N. Y. 319; *Schutz* v. *Union Ry. Co.,* 181 N. Y. 33; *Hall* v. *New York Tel. Co.,* 168 App. Div. 396.)

Furthermore, a finding that the revolving door exit was dangerous or unsafe lacks proper evidentiary support. For all that appears, the particular door was the ordinary revolving door such as is in general and common use as a means of exit from various stores and commercial buildings in the city, and there was no proof of prior accidents under similar conditions. Plaintiff, by reason of previous use of the door, knew that it would revolve "fast" or "easily" and, therefore, no warning of this fact was required to be given to her. There is no claim that the defendant was under a duty to supervise the use of the door; it was not under the supervision of any employee of the defendant at the time.

It is readily inferable that the accident was caused by the abrupt or improper pushing of the door by the stranger as the plaintiff was about to step out of the door. Where, as here, the matter of defendant's negligence is left in doubt, and it is just as probable that the injury was solely the result of the acts of a third person, as that it was caused by an act or omission on the part of the defendant, there can be no recovery. (See *Ruback* v. *McCleary, Wallin & Crouse,* 220 N. Y. 188, 195.) The negligence and consequent liability on the part of defendant rests on mere "guess, speculation or surmise" and, therefore, the judgment may not stand. (See *Lahr* v. *Tirrill,* 274 N. Y. 112, 117.)

The case of *Burgess* v. *Horn & Hardart Co.* (254 App. Div. 847, affd. 279 N. Y. 741), cited in the dissenting opinion, clearly does not support a recovery here. The record in that case reveals that the verdict was supported by the detailed testimony of two expert witnesses, familiar with the particular type of door, including their testimony, received without objection, that the rubber flanges on the doors were not in a fair or good condition of repair. There was also testimony that, as a matter of fact, the rubber or felt strips were "ragged", "torn, ruffled, upset" and "mean and poor" and "sloppy".

Finally, it should be noted that some of us in the majority are of the opinion that the verdict of the jury is grossly excessive for the injuries sustained.

The judgment in favor of plaintiff, entered upon a verdict of a jury, should be reversed and vacated on the law, and, in the interests of justice, a new trial should be directed, with costs and disbursements to abide the event.

McGivern, J. (dissenting). I find no sufficient basis for disturbing the jury's verdict in favor of the plaintiff. The plaintiff testified the revolving door "was always loose"; one "hardly had to touch it" in order for it to "go spinning around"; it "went very fast" and one "didn't have to push hard * * * ever"; a "slight push" would cause it to revolve "two or three times"; "all you had to do was touch it and it would spin". The witness Apollo, an employee at the site for 30 years, testified he never saw an engineer test the revolving door. In its totality, the plaintiff's evidence was a satisfactory predicate to support the expert's testimony that the revolving door was not in a safe condition. And the ultimate question which was solely for the jury to decide was whether the adjoining step and condition of the door was such a dangerous combination as to have been the proximate cause of the injuries to plaintiff.

A recovery on remarkably similar testimony has been sustained in the appellate courts. (*Burgess* v. *Horn & Hardart Co.*, 254 App. Div. 847 [1st Dept.], affd. 279 N. Y. 741.) In the *Burgess* case, a recitation of the facts upon which recovery by plaintiff was affirmed discloses: " She testified that as she was in one of the compartments, pushing the bar in front of her, the door started to revolve very fast, that the wing in back of her struck her, pushing her into the restaurant and causing her to fall on the floor and to sustain the injuries complained of. There was also testimony that the door moved very easily, that *a push would cause it to spin around several times*, and that the rubber on the bottom was worn. There was further testimony that if a door of this type was in a reasonably good mechanical condition, and the rubber strips which act as a brake were also in reasonably fair condition, a normal push would not make the door revolve more than about half a revolution, and that *if, with a normal push, the door revolved two or three complete revolutions, it was not in a reasonably safe condition* and the rubber strips were not properly acting as a brake." (279 N. Y., at pp. 741–742; emphasis supplied.)

The testimony as to defective strips and flanges in the *Burgess* case simply evidenced the reason for the revolving of the door at excessive speed. In the instant case the excessive speed of the door implicitly evidences the absence of adequate braking restraints. And it is noteworthy in the instant case the defendant offered no contrary expert testimony. Nor did it produce any of its engineering or maintenance personnel.

Finally, I am unable to appreciate the notion that the verdict was "grossly excessive." Her medical bills alone were over $8,000. And as to seriousness of her injuries, the defendant offered no contrary medical testimony. Directing a new trial, at her age (now over 87), presupposes the concurrent will of Divine Providence.

STEVENS, P. J., EAGER, TILZER and STEUER, JJ., concur in *Per Curiam* opinion; McGIVERN, J., dissents in opinion.

Judgment reversed and vacated on the law, and, in the interests of justice, a new trial directed, with costs and disbursements to abide the event.