■ Leo Schechter et al., Appellants, v 3320 Holding LLC et al., Defendants, and Imperial Elevator Corporation, Respondent. [883 NYS2d 193]—

Order, Supreme Court, Bronx County (Howard R. Silver, J.), entered December 24, 2008, which denied plaintiffs' motion for summary judgment on the issue of liability, reversed, on the law, without costs, the motion granted, and the matter remanded for further proceedings.

Plaintiffs live in a building owned by defendant 3320 Holding LLC and managed by defendant National Management (the building defendants). The building has one elevator. To enter the elevator cab, a person must pass through two doors: the elevator door on the floor on which the person is located and the door to the cab itself. The door to the cab opens automatically when the cab is stopped at a particular floor and, once the cab is stopped, the elevator door on that floor will unlock and a person can open it if she wishes to get in the cab. A safety device, an interlock, locks the elevator door on each floor when the cab is not stopped at that floor, preventing a person from opening the elevator door. Thus, the purpose of the interlock is to prevent people from falling down the elevator shaft.

On July 16, 2007, plaintiff Leo Schechter sustained personal injuries when he fell down the elevator shaft from the lobby floor to the basement. Mr. Schechter, erroneously believing that the cab was stopped on the lobby floor, pulled the door to the elevator, stepped forward and fell down the shaft.

Mr. Schechter and his wife commenced this action against the building defendants and Imperial Elevator Corp. (Imperial Elevator), the company that serviced the elevator, asserting causes of action for common-law negligence and negligence based on res ipsa loquitur. The theory of plaintiffs' lawsuit is that the interlock failed to work, allowing Mr. Schechter to open the elevator door even though the cab was not at the lobby. Supreme Court denied plaintiffs' motion for summary judgment on the issue of liability, and this appeal ensued.

Plaintiffs asserted before Supreme Court that both the building defendants and Imperial Elevator had a duty to maintain the elevator, particularly the interlock. Neither the building defendants nor Imperial Elevator challenged that assertion before Supreme Court. Similarly, on appeal, the same assertion by plaintiffs is not disputed by Imperial Elevator, the only defendant to file a brief. Nor is there any dispute as to the issue of notice. Plaintiffs submitted evidence that both the building defendants and Imperial Elevator had notice that the interlock was not working properly and that the door to the elevator in the lobby would open when the cab was not at that floor. Neither the building defendants nor Imperial Elevator argued before Supreme Court that an issue of fact existed with respect to notice; Imperial Elevator does not assert in its brief that such an issue of fact exists. Thus, the disposition of this appeal turns on whether a triable issue of fact exists with respect to whether defendants breached the duty of care they each owed to Mr. Schechter, whether a triable issue of fact exists with respect to Mr. Schechter's comparative negligence, or both.*

Plaintiffs made a prima facie showing that the building defendants and Imperial Elevator were negligent in failing to maintain the interlock and that their negligence caused Mr. Schechter's accident. In addition to submitting the deposition testimony of Mr. Schechter, which demonstrated that the accident happened as described above, plaintiffs tendered the affidavit of an expert who averred that (1) when properly maintained, an interlock prevents an elevator door from opening when the cab is not stopped on that floor, (2) the interlock on the elevator door in the lobby failed to work properly at the time of Mr. Schechter's accident because it had not been maintained properly, (3) Mr. Schechter was able to open the elevator door because the interlock did not work properly, (4) defendants' failure to ensure that the elevator door had a working interlock was a violation of Administrative Code of the City of New York § 27-994, and (5) the interlock did not fail due to fluids penetrating it because, if fluids had penetrated the interlock, an electrical short circuit would have occurred causing the elevator to shut down—fluids penetrating the interlock "would not affect the opening of the door without the elevator being present." That plaintiffs met their initial burden on their

* In their reply brief, plaintiffs state that their appeal is limited to that portion of the order denying them summary judgment on their common-law negligence cause of action; plaintiffs do not seek reversal of that portion of the order denying them summary judgment on their cause of action based on res ipsa loquitur.

motion of establishing a prima facie showing of entitlement to judgment as a matter of law is not in dispute; neither the building defendants nor Imperial Elevator argued before Supreme Court that plaintiffs failed to carry their initial burden, and Imperial Elevator does not assert in its brief that plaintiffs failed to do so.

Imperial Elevator does assert that the deposition testimony of its employee, Santiago, was sufficient to raise a triable issue of fact regarding its negligence. Imperial Elevator argues that Santiago's testimony raises a triable issue of fact as to whether the interlock failed because Imperial Elevator failed to maintain the elevator in a reasonably safe condition or whether the interlock failed because fluids penetrated it and caused it to "freeze," i.e., prevented the pin in the lock from moving into position to lock the door. Santiago testified that the interlock failed to work properly because it was damaged by fluids that entered the interlock, not because of improper or negligent maintenance. The fluid that Santiago identified as the principal cause of the damage was urine, which both he and the building superintendent testified sometimes was present in the cab and elevator shaft because individuals in the building relieved themselves in the elevator. Santiago testified as well that mop water residue also penetrated the interlock and damaged it.

The merit of Imperial Elevator's position depends on whether Santiago is qualified to render an expert opinion on the cause of the failure of the interlock. Santiago testified that he was employed by Imperial Elevator as a "maintenance man" for 12 years and that his duties in that position were to "check for oil, check [and clean] the [inter]locks," "clean[ ] the motor room, clean[ ] the top of the ca[b], [and] clean[ ] the pit [beneath the elevator]." Although he had worked approximately 20 years for various elevator maintenance and repair companies, Santiago had no formal training in inspecting, maintaining or repairing elevators. Additionally, Santiago was not a certified elevator mechanic and had no certifications or licenses of any kind with respect to elevator maintenance or repair. Santiago testified that he received all of his training concerning elevator maintenance and repair from a coworker at a prior employer; Santiago did not know whether that coworker possessed any licenses related to elevator maintenance and repair, and he did not elaborate on what that training consisted of.

For a witness to be qualified as an expert, the witness must possess the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable (*Matott v Ward*, 48 NY2d 455, 459 [1979]).

Here, Santiago had no formal training or education, and does not possess any certification or license, with respect to elevator maintenance or repair. He was not, however, precluded from being qualified as an expert for lack of formal training and education; he could have been qualified if through "long observation and actual experience" (*Price v New York City Hous. Auth.*, 92 NY2d 553, 559 [1998] [internal quotation marks and brackets omitted]) he possessed sufficient skill, knowledge and experience in elevator maintenance and repair to support an assumption that his opinion regarding the cause of the interlock's failure was reliable. But Imperial Elevator failed to submit evidence demonstrating that Santiago possessed such skill, knowledge and experience (*see Rosen v Tanning Loft*, 16 AD3d 480 [2005], citing, among other cases, *Hofmann v Toys "R" Us, NY Ltd. Partnership*, 272 AD2d 296 [2000]; *see also Hellert v Town of Hamburg*, 50 AD3d 1481 [2008], *lv denied* 11 NY3d 702 [2008]). No evidence was submitted demonstrating what on-the-job training Santiago received from the coworker at his prior employer; Santiago's duties as a "maintenance man"—"check[ing] for oil, check[ing] [and cleaning] the [inter]locks," "cleaning the motor room, cleaning the top of the ca[b], [and] cleaning the pit [beneath the elevator]"—do not suggest that he can render a reliable opinion regarding the cause of the failure of the interlock; and Santiago's deposition testimony does not demonstrate that he is familiar with the laws, rules, regulations, and accepted customs and practices in the field of elevator maintenance and repair (*cf. Efstathiou v Cuzco, LLC*, 51 AD3d 712 [2008]). Because Imperial Elevator failed to demonstrate that Santiago is qualified to render a reliable opinion regarding the cause of the failure of the interlock, it failed to raise a triable issue of fact with respect to the issue of its negligence.

Our dissenting colleague concludes that Santiago is qualified to render an opinion regarding the cause of the failure of the interlock because he worked on elevators for approximately 20 years and that work entailed, among other things, "checking" and cleaning interlocks, including the interlocks in the elevator of this building. We disagree that these factors establish that Santiago was competent to render an opinion regarding the *cause* of the failure of the interlock. Evidence that a person has experience "servicing and repairing elevators," standing alone, does not establish that the person possesses the requisite skill, training, education, knowledge or experience from which it can be assumed that the person can render a reliable opinion regarding the *cause* of the failure of an interlock (*see Matott*, 48 NY2d at 459).

*Dickman v Stewart Tenants Corp.* (221 AD2d 158 [1995]), cited by our dissenting colleague, is distinguishable. In *Dickman*, we rejected the defendant's claim that the plaintiff's expert was not qualified to testify regarding the causes of the misleveling of an elevator. We did so because that claim was unpreserved. In dicta, we stated that "the expert was qualified to testify regarding [causation] as he had 44 years of experience in the installation, maintenance and repair of elevators, including his tenure as one of four Staff Field Engineers with Otis Elevator Company" (*id.* at 158-159); no mention was made of the expert's skills, training, education, knowledge or other experience. The briefs in *Dickman*, however, disclose that the expert had been found qualified to render an expert opinion regarding the maintenance and repair of elevators in numerous other cases in both state and federal courts; after more than 10 years as an elevator mechanic, he trained elevator mechanics for 21 years; he had served as the vice-president in charge of maintenance, modernization and repair of an elevator maintenance and repair company; and, for the 14 years prior to giving the testimony, he had operated an elevator consulting business. Thus, *Dickman* does not support our dissenting colleague's assertion that Santiago is similarly qualified.

At bottom, Imperial Elevator, the party seeking to qualify Santiago as an expert, bore the burden of establishing that he possessed sufficient skill, knowledge and experience in elevator maintenance and repair such that his opinion regarding the cause of the interlock's failure is reliable. The only evidence on this subject indicates that Santiago had been an elevator "maintenance man," a job that entails "check[ing] for oil, check[ing] [and cleaning] the [inter]locks," "cleaning the motor room, cleaning the top of the ca[b], [and] cleaning the pit [beneath the elevator]," for approximately 20 years. That he performed that type of work for that period of time does not, standing alone, establish that he can render a reliable expert opinion on the critical issue here—the *cause* of the failure of an interlock (*see Dolan v Herring-Hall-Marvin Safe Co.*, 105 App Div 366, 370-371 [1st Dept 1905]; *see also Matott*, 48 NY2d at 459).

Imperial Elevator also asserts that a triable issue of fact exists regarding whether Mr. Schechter was comparatively negligent because he knew from past experience that the elevator door in the lobby sometimes could be opened even though the cab was not stopped at that floor, and that he therefore should have checked to make sure the cab was in fact stopped in the lobby before he stepped through the elevator doorway into the shaft.

Twice in the 6½ months prior to the accident Mr. Schechter opened the elevator door in the lobby to find that the cab was not stopped at that floor. But on both occasions Mr. Schechter complained immediately to the building defendants of the condition and on both occasions the elevator was repaired. Moreover, Mr. Schechter rode the elevator from the lobby to another floor without incident only hours before the accident. Mr. Schechter testified that, immediately before the accident, he looked into the window of the elevator door before opening it and "observed a light in the window," indicating to him that the cab was stopped at the floor because the cab had a light and the shaft was otherwise dark. But Mr. Schechter also testified that both natural and fluorescent light in the lobby would reflect against the window, making it difficult to determine whether the light was from the lobby or the cab. Mr. Schechter, who was not talking on a cell phone, listening to headphones, carrying anything or wearing sunglasses, opened the door, stepped in the shaft and fell. In our view, no valid line of reasoning based on these facts permits the conclusion that Mr. Schechter was negligent. Notably, Imperial Elevator does not cite a single case suggesting that an issue of fact exists under these circumstances and our own research has not uncovered any.

Accordingly, plaintiffs' motion for summary judgment on the issue of liability should have been granted. Concur—Andrias, J.P., McGuire, Acosta and DeGrasse, JJ.

Nardelli, J., dissents in a memorandum as follows: Since I believe that the record indicates the existence of questions of fact, as found by the motion court, I dissent and would deny plaintiffs' motion for summary judgment.

It is not disputed that the accident was caused by a malfunctioning elevator door interlock mechanism, a device that prevents an elevator door from opening when the elevator car is not on the same floor. What is at issue is what caused the malfunction, i.e., improper maintenance, as the majority concludes, or damage to the mechanism because of urination. Usually, such a conflict would create issues of fact warranting denial of the motion for summary judgment.

The majority, however, finds that there are no questions of fact by concluding, as a matter of law, that the individual who had been servicing the elevator in question for 12 years was not competent to render an opinion as to what caused the interlock to fail. I submit that such a conclusion is premature.

Ralph Santiago, the mechanic, testified at his deposition that he had been employed as a maintenance man by his current employer, Imperial Elevator, for 12 years, and had been perform-

ing similar work for 20 years. Among his duties was checking interlock devices, such as the one that failed in this case. He visited the building in question once or twice a month during his 12 years of employment with Imperial. His monthly servicing duties included "checking the locks [and] cleaning the locks," but he also received calls to go to buildings because of "shut-downs, meaning the elevator ain't [sic] working." Every time he went to a building he would stay inside the elevator and check the mechanical arms to see if the door was functioning properly. He also testified that he inspected and serviced the locks, and had replaced interlock devices at the building twice.

Santiago testified that on the day of the accident he was called to the building, observed that the interlock was frozen, and unfroze the lock with WD-40. He surmised that the lock had frozen because of the presence of urine. According to Santiago, freezing of the interlock was a recurring problem, and he often applied extra grease to prevent the accumulation of moisture. The building superintendent also testified that urination by individuals in the elevators was a recurring concern that caused the interlock to malfunction. On the day of the accident, after Santiago sprayed the lock, the door began to function properly. He did not replace the interlock device at that time.

It is evident from Santiago's testimony that his job involved servicing and repairing elevators, including the interlock. He clearly had sufficient experience to render an opinion about the malfunction of the interlock.

Nothing in the record indicates that a license is required of an elevator mechanic. Indeed, one can be qualified to testify concerning the causes for elevator malfunction simply by virtue of years of experience (see Dickman v Stewart Tenants Corp., 221 AD2d 158 [1995]). Concededly, the expert in Dickman had 44 years experience, while Santiago only has 20, but Santiago's credentials can be evaluated by the jury in assessing the weight to be given his testimony (see Eagle Pet Serv. Co. v Pacific Empls. Ins. Co., 175 AD2d 471, 472 [1991], lv denied 79 NY2d 753 [1992]).

The fact remains that Santiago's duties included being called to job sites to repair malfunctioning elevators. Inherent in the skills necessary to repair an elevator must be the ability to draw a conclusion as to why the elevator malfunctioned. The jury may not accept his analysis, or find, regardless, that the "freezing" of the locks does not absolve defendant of liability. At this juncture, however, the summary rejection of Santiago's qualifications to opine on the failure of the interlock is unsupported.