KATE KLEIN, as Administratrix of the Estate of JACOB KLEIN, Deceased, Plaintiff, *v.* LONG ISLAND RAIL ROAD COMPANY, Defendant.

Supreme Court, Trial Term, Kings County, June 14, 1950.

*Thomson & McGinty* for plaintiff.

*Thomas J. Brennan* and *Richard R. Bongartz* for defendant.

HART, J. This action was brought by the plaintiff, as administrator, to recover damages for the death of her husband alleged to have been caused by the negligence of the defendant, its agents and servants. The case was tried by the court without a jury.

On April 19, 1948, Helen Reardon was on duty as block operator at the " Olivet Tower," located at the southwest corner of the intersection of Flushing Avenue and the Long Island Railroad right of way, in the borough of Queens.

At about 7:16 A.M. she saw decedent between the curb and building line adjacent to her tower. At 7:29 A.M. a westbound train passed the crossing. Ten minutes thereafter she saw deceased lying in a culvert adjacent to the westbound tracks on the northerly side of the right of way approximately sixty feet west of the crossing. At no time did she see deceased in the act of crossing the tracks.

The engineer of the 7:29 A.M. train testified that he was at the throttle on the right (north) side of his engine and was looking directly ahead; that at 1,600 feet from the crossing he sounded the whistle; that there is a curve 600 feet east of the north cross-

ing, but after rounding this curve he had a full view of the entire crossing; that at no time did he see deceased and therefore did not again signal with the whistle before he reached the crossing.

The fireman testified that he was on the left side of the engine looking straight ahead, and he likewise says that he had a full view of the crossing but saw no one. Each denied any knowledge of having had an accident on that trip.

Upon reaching the end of their run at Long Island City they were told that " somebody had been hit at Olivet crossing " and were requested to examine the engine. An inspection of the engine revealed that the brake pipe and bracket clamp were broken at the first joint on the pilot. These were located on the right front side of the engine slightly left of the right wheels. There were " several small spots, which might have been blood, about 18 inches to the right of center about 36 inches down from the top of the pilot beam."

The bracket and brake pipe were in good condition at the beginning of the run and there had been no accident up to the time of arrival at Olivet crossing. The bracket was made of " steel or other metal " and was three quarters of an inch to an inch and a half in thickness.

Confronted with these facts by his superior, the fireman was asked the following question and gave the following answer: " Q. Will you agree that *the markings on the front of the engine* make it appear that something was struck on the right side? " (Italics supplied.) A. Yes, sir."

The engineer was asked the following question by his superiors and gave the following answer: " Q. Mr. Taplin, this man seems to have been struck by the right side of the engine; did you see any person walking on or near the tracks? A. No, sir ".

It is true that there is no direct evidence that the deceased was struck by the engine of the 7:29, but it is likewise true that recovery may be had if from the facts and circumstances causation of the accident and the negligence of the defendant may be reasonably and legitimately inferred.

The location of his body, the damage to, and the spots " which might have been blood on the front of the engine," the fact that the brake pipe and bracket were intact at the time of the commencement of the run, and the further fact that there was no other accident during that run, lead to the inescapable inference that decedent was struck and killed by the engine of the 7:29. It was conceded at the trial that the injuries were of such a nature that they might have been so caused.

The question then arises as to whether or not negligence on the part of the defendant, its agents and servants, may be inferred. It is argued that a finding of negligence would be an inference based solely on the first inference of an accident. In *Allen* v. *Stokes* (260 App. Div. 600) the body of a child was found wedged between the bumper and grill work of an automobile. As in the instant case, there were no eye witnesses to, and the driver denied any knowledge of, an accident. The court said (p. 603): "Defendant contends that a finding of negligence would be an inference based solely on the first inference of an accident. We think not. Both inferences rest upon circumstances proved. They may be termed parallel inferences based upon the same facts."

We realize that in an action of this nature the burden of proving defendant's negligence and the proximate cause of the accident is on the plaintiff. These essential elements may be established, however, by circumstantial as well as direct evidence. It is sufficient if the proof includes sufficient positive evidence of facts from which an inference or conclusion of negligent conduct may be drawn. (*People* v. *Harris*, 136 N. Y. 423, 429.)

In *Ingersoll* v. *Liberty Bank of Buffalo* (278 N. Y. 1) the Court of Appeals held that it is enough that plaintiff shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred (*Stubbs* v. *City of Rochester*, 226 N. Y. 517); that proof of defendant's negligence does not mean that plaintiff's evidence must exclude or eliminate every other possible cause (*Rosenberg* v. *Schwartz*, 260 N. Y. 162, 166) or point out the particular act or omission which caused the injury (*White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131).

In the case at bar the block operator, the fireman and the engineer each had an unobstructed view of the crossing. Each claimed to be looking and each claimed that he did not see anyone. The physical facts are such that had they looked they must have seen. Their testimony that they did not see justifies the inference that they did not look.

The brake pipe which was broken was three quarters of an inch to one and a quarter inches thick and was of "steel or some other metal". The body of deceased was found sixty feet west of the crossing. Of similar facts, the court in the *Stokes* case (*supra*, p. 602) said: "We think further that, from the facts proved, the jury would be justified in inferring that the collision occurred through the negligence of the defendant. The force of the collision, which apparently was sufficient to indent the radia-

tor grill work, would indicate that the defendant's car was traveling at high speed. That the defendant did not know of a collision of the nature of the one involved would warrant the jury in finding that he was not using due care, or using his senses of hearing or sight, or proceeding cautiously."

Defendant relies on *Wieland* v. *Third Ave. Tr. Corp.* (270 App. Div. 885, affd. 296 N. Y. 1047). In that case a witness testified he heard a loud thump; looked in the direction from which the sound came and saw the body of plaintiff's intestate three feet east of the east rail of the northbound trolley track. A northbound trolley was then twenty six to twenty eight feet north of the body and continued on its way. There was also evidence that a few minutes before plaintiff's intestate had left his store on the west side of the street. The court held that the evidence was sufficient to justify the inference that the deceased was struck by the trolley car, but not to draw the further inference of negligence on the part of the motorman. The case turned on the failure of the evidence to establish whether the deceased was crossing from west to east or returning from east to west at the time he was struck and whether or not he had at any time been in front of the trolley car. There was no evidence of damage to the trolley car from which it could be determined which part of the car came in contact with the deceased.

It is apparent that the *Wieland* decision (*supra*) rested solely on the proposition that the drawing of the inference of causation left no further basis for the inference of negligence except the first inference of causation.

In *Lowy* v. *Green* (272 App. Div. 238, 240) the court said: " This case differs from *Wieland* v. *Third Ave. Transit Corp.* (270 A. D. 885) in that here an actual collision between the vehicle and the injured person was established." The collision in the *Lowy* case (*supra*) was not established by any eye witness but by the fact that " The front right headlight, the bulb therein, and the right front fender light of defendant's automobile were broken, and glass was scattered on the roadbed." (P. 239.)

In the instant case the collision is established by the broken brake pipe and clamp and the spots on the engine which looked like blood. The inference of negligence flows from these facts coupled with the admissions of the engineer, fireman and tower employee that they never saw plaintiff's intestate, who was undoubtedly struck by the front right side of the engine.

The more recent cases are authority for the doctrine that a plaintiff in a death case is not held to as high a degree of proof of the cause of action as where an injured person can himself

describe the occurrence. (*McBride* v. *Brady*, 234 App. Div. 882; *Herbert* v. *Smith Paper Corp.*, 243 App. Div. 260, 263.)

· In *Noseworthy* v. *City of New York* (298 N. Y. 76, 80) the court approved the doctrine laid down in *Griffen* v. *Manice* (166 N. Y. 188, 193) that " ' where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present.' "

In *Mikorski* v. *City of New York* (270 App. Div. 769) the court said: " The jury was free to find that the motorman was negligent in not observing decedent's presence on the track, since on the motorman's own admission he had a clear view for at least 430 feet."

In the instant case the testimony of the engineer and fireman was given on an examination before trial and was offered in evidence by the plaintiff. The tower operator was called by the plaintiff. No witnesses were called by the defendant.

The burden of establishing contributory negligence on the part of the plaintiff's intestate rested upon the defendant. It does not follow that evidence produced only by defendant may be available to it in meeting that burden. The defendant could take advantage of any evidence in the case, by whomsoever produced, to establish that defense (*Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127, 134). It is still essential, however, that defendant shall have available some evidence from which may be reasonably and necessarily inferred, to the exclusion of inferences to the contrary, that the deceased violated the duty cast upon him of exercising such care and caution for his own safety as reasonable prudence dictated and that the violation of that duty contributed proximately to the accident. Nonsuit cannot follow mere failure on the part of plaintiff to produce evidence to the contrary (*Lee* v. *City Brewing Corp.*, 279 N. Y. 380). The court therefore reaches the inescapable conclusion that the plaintiff has established the negligence of the defendant resulting in the death of plaintiff's intestate by a fair preponderance of the evidence and that the defendant has failed to establish that there was any negligence on the part of plaintiff's intestate contributing to the accident.

The testimony of the trial discloses that the plaintiff's intestate was a junk dealer who contributed approximately $20 per week to the plaintiff herein, out of which she paid for the rent and food for herself and her husband. Both the plaintiff and

her husband were past sixty years of age at the time of the accident.

On all of the facts and circumstances the court finds that the pecuniary loss to the plaintiff herein resulting from the death of her husband is $10,000.

The court therefore grants plaintiff's motion for judgment in the sum of $10,000 with interest and costs. Interest from date of decedent's death is added by the clerk, pursuant to section 132 of the Decedent Estate Law. The decision may specify the date.