Boyce Motor Lines, Inc., Respondent, *v.* State of New York, Appellant. (Claim No. 29293.)

Eastman Kodak Company et al., Respondents, *v.* State of New York, Appellant. (Claim No. 29294.)

Mabel L. Rogers, as Administratrix of the Estate of Harold C. Rogers, Deceased, Respondent, *v.* State of New York, Appellant. (Claim No. 29295.)

Third Department, November 17, 1952

*James M. Ryan* for respondents.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Henry S. Manley* of counsel), for appellant.

BREWSTER, J. These appeals by the State are from judgments of the Court of Claims amounting to $158,000, arising out of a highway accident. Before daylight, in the early morning of November 1, 1946, a tractor-trailer proceeding eastward on a State highway known as Route 17, left the highway on a curve and plunged over an embankment. The accident happened a short distance west of the hamlet of Roscoe in Sullivan County. The driver was burned to death. The truck was completely destroyed, and its contents, a supply of photographic equipment, were heavily damaged. Judgments against the State were predicated upon findings that the highway was improperly constructed, and maintained in a dangerous condition without adequate warning to the public.

Route 17 was constructed in 1927, and remained in substantially the same condition from that time up to the date of the accident. It was a concrete highway, about eighteen feet wide, traversing a mountainous countryside along the Beaverkill River. There were three curves confronting a driver as he approached the scene of the accident from the west: first, a

slight curve to the left; then a somewhat sharper curve to the right, and finally a much longer and sharper curve to the left around the base of a steep hill or embankment. The last curve had two sections, one with a radius of 442 feet and the other with a radius of 546 feet. Between these sections was a straight interval of 17 feet. From the end of the last section the road straightened out as it approached a bridge over the Beaverkill River. From the beginning of the first curve the grade was generally downward and in some places fairly steep. At the time of the accident and about 75 feet west of the beginning of the first curve there was a reflectorized sign bearing the inscription " 40 M.P.H ". There were some six cats-eye reflectors, 70 feet apart, beginning at the westerly end of the last curve and extending for a distance of 420 feet. Other than these signs there were no other warning signs for east bound traffic. There was a guardrail, consisting of concrete posts and steel cables, on the south or outer side of the last curve.

The unfortunate driver of the tractor-trailer passed safely over the first and second curves, and his unit did not leave the concrete until it was about halfway around the last and longest curve. Then it went onto the shoulder of the road at its right and traveled approximately 200 feet to where it came to rest after plunging down an embankment, breaking off fourteen concrete guardrail posts and a telephone pole in the course of this distance. The testimony indicates that midway of this distance two blocks of concrete on the south side of the highway had settled, presumably causing a depression, the depth of which was not clearly shown. These were 100 feet or more easterly of the place where the unit first veered to its right upon the shoulder and collided with the guardrail. Just before the tractor-trailer combination left the concrete portion of the highway its speed was between 25 and 30 miles an hour according to the undisputed testimony of a driver who was following a short distance behind it. The deceased driver was unfamiliar with the route, and the driver of another truck had been assigned to drive ahead of him and show him the way. This other driver had passed safely over the highway and was waiting in the hamlet of Roscoe when the accident happened.

As may be seen from the foregoing, there was no direct proof as to what caused the accident. As to that issue the proof was entirely circumstantial. The court below drew the inference that the proximate cause of the accident was the negligence of the State in the construction and maintenance of the highway.

It rested its decision largely upon these theories. First, that the " 40 M.P.H." sign near the beginning of the first curve was misleading. There was proof that the last curve could not be safely attempted at a speed in excess of between 25 and 30 miles an hour. Second, that the design of the highway, particularly the last curve, was not in accordance with good engineering practice and created a dangerous condition. The engineer called by claimants testified that an outside curve terminating in a sharp curve at the foot of a steep grade is always dangerous; and further that the level stretch of 17 feet between the two sections of the last curve reduced the effectiveness of banking and tended to produce a throw to the outside of the curve. Third, that the sunken blocks of concrete would force a vehicle to the outside of the curve. Fourth, that other accidents had happened at or about the same place on the highway.

Circumstantial evidence, of course, may support a verdict. The rule, however, is that the inferences of negligence and proximate cause must be the only ones that can fairly and reasonably be deduced from the facts. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *Inglese* v. *New York, N. H. and Hartford R. R. Co.*, 133 App. Div. 198.) It is not necessary to exclude every other possible hypothesis, but every other reasonable hypothesis must be excluded. (*Miller* v. *Uvalde Asphalt Paving Co.*, 134 App. Div. 212.) The mere happening of the accident, even in the death case, created no presumption of liability against the State. (*Tortora* v. *State of New York*, 269 N. Y. 167.) The State was not an insurer. It had a duty to construct and maintain its highways in a reasonably safe condition, in accordance with the terrain encountered and traffic conditions to be reasonably apprehended. But even so, a certain risk was unavoidable. Roads cannot always be straight and level, and curves with descending grades are always potentially dangerous. A highway may be said to be reasonably safe when people who exercise ordinary care can and do travel over it safely.

It was incumbent upon the claimants to establish by a fair preponderance of proof that the negligence of the State was a proximate cause of the accident. We think they failed to produce proof in this regard sufficient to sustain the judgments.

We see no probative connection between the " 40 M.P.H." sign, at the beginning of the first curve, and the happening of the accident. There is no basis for finding that the deceased

driver was misled by such sign, or in any event that it contributed to the accident. At the time of the accident he was traveling at a speed of between 25 and 30 miles an hour, and at that rate of speed the undisputed testimony is that he could have made the last curve safely. The testimony of claimant's engineer cannot be connected with any certainty to the accident. At best it only provides an opinion that the curve was dangerous and might cause an accident. This is insufficient to fasten liability on the State where other causes are equally plausible. (*Tortora* v. *State of New York, supra.*) There is no proof of any actionable negligence upon the part of the State which caused decedent's vehicle to leave the paved portion of the highway at the point where it did so. The cause of that can only be answered in conjecture and speculation. The driver who was immediately in the rear said that he noticed nothing unusual in its progress until it left the concrete. But it is significant that after it left the concrete it was out of control for approximately 200 feet, during all or most of which time it was approaching another on-coming trailer-truck combination. This would seem to import a reasonable hypothesis of something other than a defect in the highway.

We differ with the trial court's finding as to the significance of the two sunken blocks of concrete. Instead of tending to throw a vehicle to the outside of the curve we should say that the opposite would be true. These blocks were about 100 feet from the point where the unit left the concrete and the right wheels of the unit were on the shoulder when the sunken blocks were reached. If, in fact, the blocks had any effect at all it would be to lower the left wheels and produce a stress to the left. But we regard this phase of the proof as wholly speculative.

Proof of other accidents was received, and rather loosely, since similarity of conditions was not shown. But such as it was it favored the State rather than the claimants in our opinion. For six years, from 1941 to 1946 inclusive, seven accidents at the curve in question were reported. The court below found that in a ten-year period ten accidents happened at or near the same place. But the proof also showed that Route 17 was a heavily travelled truck route, and an actual count made in August, 1946, showed 372 trucks passing through Roscoe in the twelve-hour period between 7:00 A.M. and 7:00 P.M. More significant is the fact that most of the freight truck traffic passed through Roscoe at night. Viewed against this record it is difficult to sustain a finding that the highway was so dangerous

in the vicinity of the accident that the only reasonable inference to be drawn in these cases as to the proximate cause of the accident was negligence on the part of the State.

The judgments should be reversed and the claims dismissed.

Judgments reversed and claims dismissed, with costs. The following findings of fact and conclusions of law, as to the Boyce claim and corresponding findings and conclusions of law as to the other claims, are reversed, viz.: Findings Nos. 15 to 22 inclusive, 24, 25, 27, 28, 30 and 31, and Conclusions of Law Nos. I and II; the following findings of claimant's request to find as to the Boyce claim and corresponding findings as to the other claims are reversed, viz.: Findings Nos. 6, 13, 17, 20, 24 to 39 inclusive, and the first conclusion of law. As to the appellant State, the following requests to find are found, viz.: Nos. 6, 12, 16, 21, 22, 23, 27, 31, 32, 34 to 42 inclusive, and 44, and Conclusions of Law Nos. I to V inclusive. Settle decision on notice.

Foster, P. J., Bergan and Coon, JJ., concur; Heffernan, J., taking no part.

Judgments reversed, on the law and facts, and claims dismissed, with one bill of costs.

The following findings of fact and conclusions of law, as to the Boyce claim and corresponding findings and conclusions of law as to the other claims are reversed, viz.: Findings Nos. 15 to 22 inclusive, 24, 25, 27, 28, 30 and 31, and Conclusions of Law Nos. I and II; the following findings of claimant's requests to find as to the Boyce claim and corresponding findings as to the other claims are reversed, viz.: Findings Nos. 6, 13, 17, 20, 24 to 39 inclusive, and the first conclusions of law. As to the appellant State, the following requests to find are found, viz.: Nos. 6, 12, 16, 21, 22, 23, 27, 31, 32, 34 to 42 inclusive and 44, and Conclusions of Law Nos. I to V inclusive.

Settle order on notice.