HYMAN WANK, Public Administrator of the County of Kings, as Administrator of the Estate of ALEXANDER KOSUR, Deceased, Appellant, v. NICHOLAS AMBROSINO et al., Respondents.

Argued April 14, 1954; decided July 14, 1954.

*Ralph Stout* and *Daniel G. Connolly* for appellant. I. Upon the evidence the question of defendants' negligence was one of fact for the jury. (*Osipoff* v. *City of New York,* 286 N. Y. 422; *Noseworthy* v. *City of New York,* 298 N. Y. 76; *Eder* v. *Cashin,* 281 App. Div. 456.) II. It is presumed that a person, once shown to be living, is still alive; and it is incumbent upon a party who asserts the death to prove it. (*O'Gara* v. *Eisenlohr,* 38 N. Y. 296; *Dworsky* v. *Arndtstein,* 29 App. Div. 274; *Bracy* v. *Bracy,* 167 Misc. 253; *Matter of Dieudonne,* 186 Misc. 642; *Matter of Schoonmaker,* 160 Misc. 810; *Matter of Board of Educ. of City of N. Y.,* 173 N. Y. 321.)

*Bernard Meyerson* and *Richards W. Hannah* for respondents. I. There is no proof or inference in the record that the deceased was hit by defendants' car and, even if same were to be conceded, there still is no proof or inference of any act of negligence on the part of defendants' driver; therefore, plaintiff failed to make out a prima facie case. (*Kokofsky* v. *City of New York,* 297 N. Y. 553; *Lifton* v. *Title Guar. & Trust Co.,* 263 App. Div. 3; *Noseworthy* v. *City of New York,* 298 N. Y. 76; *Matter of Case,* 214 N. Y. 199; *Auerbach* v. *Commercial Capital Corp.,* 276 App.

Div. 911.) II. Plaintiff failed to prove that any loss was sustained. (*Mitchell* v. *New York Central & H. R. R. R. Co.,* 2 Hun 535, 64 N. Y. 655; *Wagner* v. *Clausen & Son Brewery Co.,* 146 App. Div. 70; *Quin* v. *Moore,* 15 N. Y. 432; *Josephson* v. *Schwartz,* 225 App. Div. 675.)

Desmond, J. In this suit for negligently causing the death of plaintiff's intestate, the affirmance, by the Appellate Division, of a dismissal of the complaint at the close of plaintiff's case, requires us to say whether or not plaintiff made out a sufficient case for presentation to the jury. We hold, with the courts below, that he did not.

At about 6:00 p.m. on a January evening, an automobile owned by one of the defendants and driven by the other, stopped for a traffic light, at an intersection, then turned the corner. It had traveled, at slow speed, not more than fifty feet in the intersecting street when the driver felt a bump, looked at the tires to see if one of them had gone flat, then started the car up again but, hearing more noise, again stopped the automobile and saw that, underneath it, was the body of plaintiff's intestate, the feet pointing toward the car's rear, the head being nearer the front of the vehicle. The man died soon afterwards. Night had fallen at the time, but there were street lights nearby. The driver heard no outcry and had not seen plaintiff's intestate before. No one knew how he had gotten underneath the car. There were " drag marks ", said one witness, on the pavement starting about 170 feet away in the direction from which the car had come and ending at the body. The driver had a defect in the vision of his left eye, but there is nothing to show that it interfered with his safe operation of an automobile. Such is a fair summary of all the proof (except as to damages) presented by plaintiff.

An inference could be justified that defendants' car hit the man, but, since there is nothing at all to show how that came about, there is nothing on which to base a finding of negligent causation. True it is that " in a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence " (*Noseworthy* v. *City of New York,* 298 N. Y. 76, 80) but before that rule comes into play there must be some showing of negli-

gence, however slight. *Noseworthy,* and similar cases, describe a method of, or approach to, weighing evidence, but there must be a showing of facts from which negligence may be inferred. Here there was none. The statement by one witness that there were '' drag marks '' on the street was denied by another of plaintiff's witnesses who was equally positive that they were '' tire marks ''. Only by a process of pure conjecture could such testimony be a basis for a verdict of negligence.

The judgment should be affirmed, with costs.

CONWAY, J. (dissenting). At about 6:00 P.M. on an evening toward the end of January, the defendant Felice Ambrosino was driving his defendant brother's automobile. He had left a drug-store in Manhattan Avenue at Bedford Avenue and proceeded north along Manhattan Avenue toward Norman Avenue. At the intersection, the light was red and he stopped. When it changed to green he made a right turn going east into Norman Avenue. He said he saw no one crossing the intersection when he made the turn. The light supplied by the corner stores was good and he noticed cars parked on Norman Avenue in front of a liquor store. While he was driving on Norman Avenue he felt a bump and he stopped his car. He thought he had a flat tire. He got out, looked and found nothing. He then continued driving, heard some noise and stopped near Norman Avenue and Leonard Street, the next block to Manhattan Avenue. Again looking for a flat tire, he found a man underneath his car. He said that, although he did not wear glasses, there was a defect in vision in his left eye due to a cyst on the eyeball which he was waiting to become '' fully ripe '', pursuant to his doctor's orders, so that an operation might be performed. That was substantially the driver-defendant's story on examination before trial.

A police officer testified that, when he was summoned to the scene, the body of the deceased was approximately under the center of the automobile. He said the deceased '' was caught by the chest '' and that the car had to be raised by the emergency squad in order that the deceased might be removed. The officer found '' drag marks '' on the roadway which commenced about twenty-five feet east of the Manhattan Avenue curb and about twelve feet from the south curb of Norman Avenue and continued on Norman Avenue for a distance of 170 feet ending at the body

of decedent underneath the car. He defined " drag marks " as ones made " where the dirt would be swept away from something dragging along the ground " leaving a mark on the surface.

Another witness testified to slightly longer " drag marks ". He said they went back from the automobile a little over three quarters of the block, which he estimated to be anywhere from 175 to 200 feet long. He said they commenced about twenty feet from the intersection of Manhattan Avenue and Norman Avenue going toward Leonard Street.

Still a third witness, who had a shop about eighty feet east of the corner of Manhattan Avenue and Norman Avenue, had his attention attracted by the " hollering " of people on the street in an attempt to stop the car that was passing. He looked and saw something underneath the car. The people were running after the car which was in motion. They were running toward Leonard Street. He saw marks which extended for 175 feet before the car came to a stop. He was then asked: " And can you tell us what those marks looked like? " He answered: " Well, tire marks, as if there was pressure on the car and it was *dragged* along." (Emphasis supplied.)

These were, of course, the marks made by the body of the deceased for the hospital records show that he had a craniccerebral injury, fractures of the 5th, 6th, 7th, 8th, and 9th ribs of the left side — those of the 7th and 8th being multiple — and a fracture of the ascending ramus of the left pubis. The injured man lived until the evening of February 1st, four days after the occurrence.

That was the case for the plaintiff and on that the court dismissed the complaint. " In view of the dismissal we must take the facts in a light most favorable to the plaintiff and, in determining whether the facts proved constitute a cause of action, give him the benefit of every favorable inference which may reasonably be drawn. (*Faber* v. *City of New York,* 213 N. Y. 411, 414; *Shuman* v. *Hall,* 246 N. Y. 51, 57.) " (*Osipoff* v. *City of New York,* 286 N. Y. 422, 425.)

Here there was evidence of contact by the automobile and the deceased and in addition proof through the driver and witnesses that the position of the body and the marks on the street were such that a jury could properly infer that the plaintiff's intestate

was struck by the automobile, knocked to the ground and then caught by the chest under the front portion of the automobile, and dragged for 170 feet. Contact was the determining factor in the cases of *Klein* v. *Long Is. R. R. Co.* (199 Misc. 532, affd. 278 App. Div. 980, affd. 303 N. Y. 807) and *Scantlebury* v. *Lehman* (305 N. Y. 713) where we held in each that a prima facie case had been established. Had the deceased been tossed aside by the contact in the face of the denial by the driver that he saw him, we would clearly have a prima facie case under our decision in the *Scantlebury* case (*supra*) for a man may not drive on a public thoroughfare, strike a pedestrian and, admitting the contact, pass on his way and be exculpated by his statement that the pedestrian had not been seen. It is even less permissible to say that a prima facie case has not been established here when, instead of being cast to one side, the pedestrian is caught beneath the car and dragged for a distance and then, after inadequate inspection, is dragged for a much further distance.

The plaintiff's intestate is dead, and, therefore, the plaintiff is not held to the high degree of proof required where an injured person may give his own story of the accident (*Noseworthy* v. *City of New York,* 298 N. Y. 76, 80). A man has been brought to his death by the operation of an automobile in the hands of defendant-driver Ambrosino. He was in sole control of the instrument of death. That is a serious occurrence in a body politic. A driver must have his car under complete and attentive control, otherwise he is negligent in the operation of it. A jury is not required to believe all of the testimony of a defendant given in an examination before trial — it may believe part and disbelieve part. It would have had the right here, if the case had been submitted to it, to believe the testimony of the three disinterested witnesses, one a policeman, in preference to the testimony of a defendant who could see so little that he could not discern when he got out of his car the body of a man caught beneath it and therefore climbed back and dragged the man further until stopped by persons on the sidewalk who ran and shouted to him to stop because *they* could see the body caught beneath the car.

The police officer testified that the drag marks commenced about twenty-five feet east of the east curb of Manhattan Avenue on Norman Avenue and about twelve feet out from the south curb of Norman Avenue. The sidewalk of Manhattan Avenue and Norman Avenue is about eighteen feet wide. Deducting that sidewalk width from the twenty-five feet from the east curb of Manhattan Avenue would bring the point where the drag marks started, and where the jury could find the defendant struck, just about in the crosswalk in Norman Avenue at Manhattan Avenue. Jablonowski, the second of the disinterested witnesses, placed the commencement of the drag marks from fifteen to eighteen feet from the southeast corner of Manhattan Avenue at Norman Avenue. Even Santoro, the third disinterested witness, testified that when he first heard the " hollering " of the people on the street and looked out, defendants' automobile was only forty feet east of the corner of Manhattan and Norman Avenues.

A jury could have properly found that defendant Felice should not have been driving an automobile at all in view of his demonstrated inability to see. As the dissenting Justices in the Appellate Division said: " An adequate inspection at that time [when defendant got out to see if he had a flat tire] would have disclosed the presence of plaintiff's intestate underneath the car, and would have prevented such further injury as may have resulted from his being dragged a considerable distance further." (282 App. Div. 957, 958.)

We have been discussing direct testimony which makes this case much stronger than the cases of *Klein* v. *Long Is. R. R. Co.* (199 Misc. 532, affd. 278 App. Div. 980, affd. 303 N. Y. 807, *supra*) and *Scantlebury* v. *Lehman* (305 N. Y. 713, *supra*) where plaintiffs recovered. We have said: " The existence of remote possibilities that factors other than the negligence of the defendant may have caused the accident, does not require a holding that plaintiff has failed to make out a *prima facie* case. It is enough that he show facts and conditions from which the negligence of the defendant * * * may be reasonably inferred. (*Stubbs* v. *City of Rochester,* 226 N. Y. 516.) " (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1, 7.)

All we are concerned with here is whether plaintiff made out a prima facie case and was entitled to go to the jury. We are

not concerned with the weight of evidence for defendants put in no case.

The judgment should be reversed and a new trial granted, with costs to abide the event.

LEWIS, Ch. J., DYE, FULD and VAN VOORHIS, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which FROESSEL, J., concurs.

Judgment affirmed.