Peter SMIEL, as Administrator of the Goods, Chattels and Credits of James Smiel, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 6230.

United States District Court
N. D. New York.

Jan. 4, 1957.

Hage & Ferris, Utica, N. Y., for plaintiff. Raymond J. Ferris, Utica, N. Y., of counsel.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., for defendant. Richard Bolton, Troy, N. Y., of counsel.

BRENNAN, Chief Judge.

A troublesome question of liability exists in making the decision in this case.

Action is brought under the provisions of the Federal Tort Claims Act, 28 U. S.C.A. §§ 1346, 2671 et seq., to recover money damages based upon the alleged negligent operation of a United States mail truck resulting in the infliction of personal injuries upon the person of James Smiel which resulted in his death. A second cause of action, authorized under the provisions of New York State law, seeks compensation to the estate of the deceased because of his conscious pain and suffering.

At the time of the accident, hereinafter referred to, James Smiel was an infant of the age of three years and eight months. His death occurred within minutes after the accident and there

exists no basis for an award in the second cause of action.

The evidence as to the happening of the accident is unsatisfactory and I am fearful that if plaintiff's contention is to be accepted, the basis of liability must go beyond the reach of legitimate inference and enter the realm of speculation.

At the outset, it may be said that I am impressed that all of the witnesses, for both litigants, gave their evidence in accordance with their present recollections. Some of the witnesses were children and they were prone to opinionate their statements. The evidence was not lengthy and an outline of same is set out below from which may be gathered the problem involved in determining negligence of the agent of the defendant.

Grande Street, in the City of Mechanicville, N. Y., may be termed as located in a residential district. Its paved portion is 28 feet wide from curb to curb. It runs generally in an easterly and westerly direction and a 3 foot paved sidewalk is located on either side of the highway, adjacent to the curb line itself. The Smiel home is located on the north side of the street and the Amodio residence is located on the south side of the highway.

On the 12th day of July 1956, Mr. Callahan, who also resided in the vicinity, operated a United States parcel post truck in a westerly direction over Grande Street, bringing same to a stop on the southerly side of that street, near the residence referred to as the Amodio home. The business of the driver at the time and place was the delivery of a parcel post package at the Amodio residence. The day was fair. The time of the accident is fixed at about 12:15 P.M.

Peter Smiel, the father of the infant James, returning home to his noonday meal, parked his passenger vehicle on the north side of the highway, facing west and in the vicinity of his home. He fixed the time at about 12:10 P.M. At that time he saw the deceased on the sidewalk across the street. He entered his own home. A few minutes later, his other son, Peter, aged about five years, entered the house and advised that Jimmy had been hurt. The witness went outside. Jimmy, the injured child, was being carried by the driver of the truck, into the Amodio home.

The witness, Johnal Roy, age ten, testified that she was sitting on the porch of the Amodio home, playing with some other young girls. She saw the truck stop in front and saw the driver get out of the truck. She "thinks" that Jimmy, the deceased, Billy Mullady and Peter Smiel were playing in that vicinity. Billy asked the driver if he could get into the truck and she again "thinks" that the three boys got into the truck, seating themselves in the driver's seat. The package was delivered at the Amodio home by the truck driver. He returned to the standing truck, asked the boys to get out. She is not sure but "thinks" she saw the three of them get out of the truck and she saw no more until after the accident.

Barbara DeVito, about 13 years of age, was in front of her own home on the opposite side of the street and was engaged in mowing the lawn. She stopped her activity and was engaged in conversation with David Devoe. She saw the truck stop in front of the Amodio home, heard children laughing and saw Billy Mullady next to the truck; saw no other boy there. There were, however, children on the Amodio porch. She saw no children at the driveway. Her attention was next attracted when David Devoe yelled "Jimmy". She looked and Jimmy was on the ground near the right rear of the truck. Callahan, the driver, came over and picked him up.

David Devoe, age 9, stood holding his bicycle and talking to Barbara. He also saw the truck stop in front of the Amodio home and saw two boys—Billy Mullady and Jimmy Smiel—near the Amodio driveway. He observed nothing else until he saw Jimmy under the right

wheel of the mail truck. The truck moved forward a short distance. The witness did not see Peter Smiel at all. He did however see the driver of the truck get out and go up to the porch and, as he returned, saw him walk around the rear end of the truck.

Martin Callahan was the driver of the truck involved. He resides in the immediate vicinity; was well acquainted therewith and had a personal acquaintance with the youngster, Billy Mullady. He parked his truck near the Amodio home; saw two or three boys—three or four years old—playing in the vicinity. He picked up the package to be delivered and said "hello" to the Mullady boy. Apparently all three boys were on the sidewalk, south of the truck. After he delivered the package, he saw no one on the sidewalk but the Mullady boy was seated in the truck. He lifted the boy out from the lefthand door and placed him on the sidewalk; saw no other boys in the vicinity at that time. He passed around the rear of his standing truck; saw no one; entered the righthand door, which was on the street side, took a seat behind the steering wheel on the left, leaned out and told the Mullady boy that the truck was going to move. He had just started when someone yelled that Jimmy was hurt. He stopped his truck and found Jimmy lying about eighteen inches to the north or on the street side of the right rear wheel with a portion of his body opposite the right rear axle. He was lying on his back. Callahan picked up the boy, started into the Amodio home and the child was later taken to the hospital.

Helen Ryan was a mature woman who stood on her porch some distance northeast of the place of the accident. She saw the truck parked in front of the Amodio home; saw a group of children playing in front of the Amodio home but they appeared to be from six to twelve years of age. She saw Callahan approach the truck after the delivery of the parcel. She saw neither Jimmy, Billy Mullady or Peter Smiel. She saw Callahan go around the rear of the truck; saw it start and stop but did not see the injured boy before the accident.

The above is a brief outline of the evidence as to the happening of the accident, disclosed by reference to my notes. After reviewing same, just how the accident happened is a matter of uncertainty in my mind.

■■ The parking of the truck on the lefthand side of the highway is a circumstance to be considered but I fail to see how it had a causal relationship to the resulting accident. Consideration of the contributory negligence of the deceased is eliminated since he was non sui juris. Verni v. Johnson, 295 N.Y. 436, 68 N.E.2d 431, 174 A.L.R. 1078. The negligence of the parents or custodians of the deceased may not be imputable to him. Sec. 73, N.Y. Domestic Relations Law, McKinney's Consol.Laws, c. 14, Meyer v. Inguaggiato, 258 App. Div. 331, 16 N.Y.S.2d 672. The above statements of law which are not disputed narrow the problem to the determination of the question of negligence of the driver of the truck.

The driver may be considered as an interested witness but his evidence was straightforward and was corroborated in some of its essentials, so that it cannot be entirely rejected. There can be no question but what the deceased boy must have been in the vicinity of the truck when Callahan returned after the delivery of the package. His story as to the removal of the Mullady boy from the truck seat bears all the earmarks of truth. The fact that he passed around the rear of the truck before starting same is corroborated by other witnesses. His statement that the truck moved only a short distance is also corroborated. It seems inescapable that the deceased boy must have been under the truck just prior to its forward movement. Why, when or where he got in that position is a matter of pure speculation. "An inference could be justified that defendants' car hit the man, but, since there is nothing at all to show

how that came about, there is nothing on which to base a finding of negligent causation." Wank v. Ambrosino, 307 N.Y. 321, at 323, 121 N.E.2d 246. The driver expresses uncertainty as to whether or not his truck actually caused the injury. He felt no bump and the location of the boy after the accident, as it appears in the evidence, only adds to such uncertainty. There is no evidence of any other moving vehicle in the vicinity at the time of the accident.

If negligence exists here, it must be because the driver of the truck is required to look under his vehicle before starting same under the circumstances then existing or he must see to it that children of tender ages are removed from the vicinity of the truck before same is put in motion. These seem to be the arguments of the plaintiff but no legal decision, supporting same, are cited.

The driver must exercise ordinary care and caution, having in mind the proclivities of children of tender age, when his vehicle is to be moved while they are in close proximity thereto. I know of no authority or rule which would require that one must forcibly remove children from a position on the sidewalk where they have a right to be; neither do I know of any precedent which requires the operator of a vehicle to look under his truck before setting same in motion. Precedents are of little value. The question of negligence is to be decided in the circumstances of each particular case. The injury of a young child by the operation of a motor vehicle in the control of a third person is a matter which may excite sympathy but sympathy alone will not afford a basis for recovery.

Under the circumstances here, but one finding of fact and one conclusion are necessary.

The court finds the plaintiff has failed to sustain his burden of proof that the accident and resulting injuries to and death of infant, James Smiel, were caused by negligence of the de-fendant or its agent who at the time was acting in the scope of his employment.

It is concluded that the complaint be dismissed.

Judgment is directed accordingly.