Karolina **ZWOLINSKI**, as **Executrix** of the Estate of Stephen J. Zwolinski, Plaintiff,

v.

**UNITED STATES** of America.

Civ. A. No. 6287.

United States District Court
W. D. New York.

Oct. 18, 1957.

Nathan A. Borkowski and Raymond R. Niemer, Buffalo, N. Y., for plaintiff.

John O. Henderson, U. S. Atty. (Leo J. Fallon, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for defendant.

MORGAN, District Judge.

The above entitled action is one for wrongful death of plaintiff's decedent, and for personal injuries sustained by decedent, arising out of the alleged negligence of one Anthony Affrunti, a duly licensed operator of a United States mail truck. There is no question but that the operator was driving the mail truck under the authority of the Postal Service, an agency of the defendant, United States of America. Thus jurisdiction exists under 28 U.S.C. Section 2674. The accident occurred at about 7:55 P.M. on March 19, 1953, at the intersection of Lord and Clinton Streets, each public highways wholly contained within the City of Buffalo, County of Erie and State of New York. Hence New York Law particularly sections 120 and 130 of the Decedent Estate Law of New York is applicable. Thus plaintiff had burden of proving defendant's negligence. Fogal v. Mid States Freight Lines, 2 Cir., 1952, 193 F.2d 482. In like manner, the burden of establishing contributory negligence, if any, on the part

of plaintiff's intestate in a death action, rests upon defendant. Klein v. Long Island R. Co., 199 Misc. 532, 99 N.Y.S. 50, affirmed 278 App.Div. 980, 105 N.Y.S. 2d 999, affirmed 303 N.Y. 807, 104 N.E.2d 364.

The principal witness for the plaintiff, in his attempt to prove negligence against the duly authorized agent of the defendant, was an individual who resided at 788 Clinton Street, about 100 feet east from its intersection with the easterly side of Lord Street. He did not clearly identify the location of the vehicles. He could not identify plaintiff's exhibit 15, a photograph admittedly representative of the intersection and saw too much at one time to be believable. Under applicable New York Law, particularly section 82 subdivision 4, and subdivision 2 of section 90 of the Vehicle and Traffic Laws of the State of New York, it is the duty of an operator of a motor vehicle entering a through street, where a stop signal is in his path of progress, to come to a complete stop; and then progress with caution into the intersection. Under subdivision 1 of section 82 of the Vehicle and Traffic Law of the State of New York, United States mail trucks, when in the performance of their duty, have a right of way "but this shall not relieve the driver or owner of any such vehicle from liability for injuries inflicted in consequence of the arbitrary or careless exercise of this right."

Plaintiff's principal witness, above referred to, was a man 67 years of age, worked steadily and arrived at home in the upper apartment of 788 Clinton Street at 6 P.M., and stated that he sat there in the kitchen waiting for his wife to prepare dinner until 7:55 P.M. At one time, he stated that the private vehicle, which decedent was driving, did stop; at another time, he stated it was proceeding slowly. At one time, he said the truck, operated by the United States Postal Service operator, was going fast and that at another, said the private vehicle was within the intersection southbound on Lord Street when the Postal truck, westbound on Clinton Street,

struck the door post and rear end of the decedent's car. This witness admitted that he had not driven in some 14 years and that his license had been revoked at that time by the State of New York. The driver of the mail truck was a man 38 years of age, lived in the area of the accident at the time of the accident, and still lives there, although he is presently employed as a salesman for the Westinghouse Electric Corporation. From September 1948 to March 1953, he had been a substitute carrier and one of his duties was to drive at night. He had picked up mail from a box at the southeast corner of Smith and Clinton Streets, approximately 100 yards east of Lord and Clinton Streets, stopped at Smith and, when the traffic light, which was red at the time, changed, signalled for, and made, a left turn. He testified clearly that Clinton Street, at or near the point of accident, had a four degree grade, that he saw the private vehicle when about 60 to 70 feet from Lord Street coming out of the intersection, accelerating from about 15 miles per hour to 30 miles per hour. There was a stop sign of the regular form used under State law, being a yellow sign with black letters "Stop". The Postal truck had a governor with a maximum speed of 32 miles per hour and he, the driver, had tested the lights, brakes and general condition of the car before taking the truck out. The truck was a one ton International; at the time of the accident, he had been driving for 15 years, and estimated his speed on Clinton Street to be between 20 and 25 miles per hour. This was corroborated by another Postal truck operator, Samuel Vaccerrella, who, at the time of the accident, had been in the United States Postal Service for six years and was driving a tractor from the New York Central Depot to Swan and Elm Streets. After he passed Smith and Eagle Streets, he observed the Postal truck involved in the accident about 150 feet away, at which time, he was doing 20 miles an hour, and the car ahead of him was going a bit faster.

On all the evidence, it would appear that the operator of the Postal truck was

not more than 10 feet from the intersection when the passenger vehicle operated by the decedent entered it. Important to this decision, in the Court's opinion, is the fact that the Postal vehicle, weighing one ton, stopped almost immediately at the point of impact, whereas the private vehicle, which was stated to be a 1949 Mercury, spun around after the impact to the southwest corner of Clinton and Lord Streets, at which point, the body of the decedent fell out of the private vehicle and it continued to the southeast corner of Clinton and Lord Streets heading in a northerly direction; its original course being south on Lord Street.

A stipulation between the parties was entered into to the effect a garageman, if sworn, would testify the damages to the 1949 Mercury were paid in the total sum of $300. Testimony was to the effect that the decedent was unconscious from the time of the accident until his death nine days later, and the attending physician never saw him completely conscious. The injuries sustained at the above time and place were obviously the cause of death. The decedent was an unmarried man, 32 years of age, who, according to the plaintiff, had lived with her and her husband from the time his parents had died some 16 years prior to the accident. There were funeral expenses of $1,548.24 and a Sterling Rutland monument was set at the grave at a total sum of $1,155.45. Prior to his death, decedent was employed at the International Milling Company, with an average gross earning of $98.79 per week, and was also a part time organizer for the Polish National Alliance, with varying income. Medical bills were $435, nurses bill $96, hospital expenses $799.55.

According to the American Experience Table of Mortality, decedent had an expectancy of 33.92 years. He had one brother and two sisters living in Poland, and left a Last Will and Testament admitted to probate in Erie County Surrogate's Court, wherein he left his property to them in equal shares. The plaintiff executrix identified his signature on said Last Will and Testament and when asked as to the further content of the Will, she stated she could not read or write, but later identified one of the subscribing witnesses as her husband and the other as herself and stated under oath that that was her handwriting.

It has long been the law that one has the right to assume that all drivers of automobiles will obey the law of the road and he is not bound to anticipate that anyone is going to disobey it. Walter v. State, 187 Misc. 1034, 65 N.Y.S.2d 378; Donahue v. Fletcher, 299 N.Y. 227, 86 N.E.2d 574. This court finds that decedent failed to stop at, or close to, the intersection in compliance with the statute; that he failed to make a proper observation for approaching through traffic before entering the intersection; that he failed to yield the right-of-way to the Postal truck and that he failed to drive his automobile in a careful and prudent manner. It is further this court's opinion that the Postal truck operator had assumed that the private vehicle would stop before continuing into the intersection, having the right to make this assumption, and to act accordingly. The testimony of the Executrix was that the decedent, though not a drinking man and having a fine physique, nevertheless, left their residence at 346 Fillmore Avenue at some time around 6:45 P.M. after having had his dinner, and lived not too far distant from the scene of the accident as to normally require an hour and ten minutes to traverse that distance. Finally, damages recoverable by decedent's next of kin are confined by statute to a fair and just compensation for the pecuniary injuries resulting from the decedent's death to the person or persons for whose benefit the action is brought. The only affirmative testimony on this point was from one Stephen Michalski, a partner in the Vasal Traveling Agency, that on May 12, 1952, the decedent had sent $33.95 in medicines and on June 24, 1952, $5.50 worth of medicines to one of his sisters. Regardless of the statutory right-of-way of a United States mail truck, the plaintiff failed in the required proof, by a fair preponderance of the

evidence, to show any negligence on the part of the defendant or its duly authorized operator. The testimony of the latter was sufficient to prove contributory negligence on the part of the decedent.

Findings of fact and conclusions of law may be settled on notice in accordance with this opinion.