Melvin H. Osterman, J.
This is a claim for damages for the wrongful death of claimant’s decedent by reason of the alleged *167 negligence of the State in the maintenance and construction of a section of Route 9, south of Briarcliff Manor in Westchester County, and particularly that part of the road known as Arch Hill.
On July 30, 1957, at about 1:30 a.m., decedent operated an automobile which collided with a car driven by one Clifford. Although prior to the accident the decedent had been driving in a generally southerly direction, after the accident his car was found in the northbound lane of the highway, its side smashed into the front of Clifford’s car. The police removed decedent to a hospital where, approximately six hours later, he died of multiple injuries sustained in the collision.
Claimant alleges several areas in which the State was negligent in the construction and maintenance of the road. It is her contention that a combination of all of these conditions was the proximate cause of the accident. The allegations of negligence include wrongful signing, improper width and composition of pavement, improper superelevation, unreasonable grade and unreasonably dangerous curving.
First, the claimant complains about the signing of the road and in particular, the “ resume speed ” sign before the top of the hill and a “ reverse curve ” and “ 30 M.P.H.” sign leading into the second curve in the middle of the hill. She contends that the “ resume speed ” sign would indicate to the driver to go at the legal limit of 50 M.P.H. while there is immediately ahead a steep curve and that further, the “ reverse curve ” sign being placed no more than 80 feet in advance of the second curve fails to give adequate warning. The “ resume speed ” sign is more than 600 feet in advance of the top of Arch Hill and it is quite reasonable and proper for the State to permit drivers to resume maximum speed for those 600 feet. At the top of the hill there is a sign “ Hill ” which is notice to drivers that the grade of the road will change. More important, however, is the fact that the accident occurred at a point approximately opposite the entrance to Rockwood Estate, which is located almost at the bottom of the hill. At the time of the collision, the claimant’s decedent was more than 2,400 feet from the “ resume speed ” sign and almost 1,000 feet from the 11 reverse curve ’ ’ sign. He had already passed through the second curve and was on a straight road that had no more than a one-degree curvature at the point where the accident occurred. The court finds no causal relationship between the signing of the road and this accident.
Second, the claimant contends that the width and composition of the pavement constituted a negligent condition. The pavement of the road at the top of the hill and for some distance *168 before it is composed of 2 outside lanes 6 feet in width, and 2 inside lanes 12 feet in width, all paved with concrete. At a point approximately 330 feet below the top of the hill, the pavement changes into 4 lanes each 9 feet wide, with the 2 outside lanes composed of brick and the 2 inside lanes composed of concrete. This composition continues for approximately 1,000 feet when the road again changes to the 6-foot outer lanes and 12-foot inner lanes uniformly concrete. It is the claimant’s contention that the change in width and composition of the road created a condition of varying friction coefficients meeting the automobile causing a spin or skid to be likely. Not only did the claimant’s expert fail to convince the court that this construction was improper when the road was built in 1925, but he admitted that the condition of the tires on Rogers’ car and his speed both would have played an important part with respect to the friction coefficients and that both of those factors were unknown to him. In addition, we find that the accident occurred at a point 500 feet beyond the point where the pavement became uniformly concrete; and that proof of skid marks or other evidence tending to show that the car went out of control prior to the 500 feet is absent from the record. The court finds no causal connection between the change in width and composition of this road and the collision.
Third, claimant alleges that this road was improperly graded, there being a 10% grade from the top of the hill, which grade is alleged to be excessive and improper. However, the grade at the point of collision is no more than 3% and for 300 feet prior to the point of collision is no more than 8%. Claimant’s expert himself admitted that the grade in and of itself was not unreasonable nor contrary to accepted standards of construction. We fail to see how the grade can be considered as anything but proper and acceptable.
The claimant further contends that the superelevation or banking of the road is improper particularly at a point approximately 1,000 feet from the top of the hill. The court agrees with claimant that at this particular point the banking was improper. The road leads into a curve to the right and good practice would dictate that the road be banked higher on the outside of the curve and lower on the inside of the curve. However, at this point there is superelevation of approximately 2%, it being higher on the inside of the curve than on the outside. No other portions of the road were shown to be unsatisfactorily banked. However, it was claimed that this improper banking forced the automobile to lunge towards the center of the highway and into the opposite lane of traffic. Even if this hypothesis, which is unsubstantiated on the record, be true, it is inconceivable to the court that the *169 Rogers’ car was first forced into the opposite lane and then caused to remain therein for the next 500 feet on a straight road in order to collide with the Clifford car. During those 500 feet the Rogers’ car could have easily gotten back into the right lane if in fact it was temporarily ‘ ‘ pushed ’ ’ into the opposite lane by the improper banking.
Finally, the claimant alleges dangerous and unreasonable curves in the road. Suffice it to say that the first curve was a maximum 5-degree curve and that the second was approximately 3 degrees. The language in Foley v. State of New York (16 A D 2d 90, 91) is dispositive of this issue when the court said, “ There seems no clear reason why a driver traveling on an old-type macadam road, and exercising reasonable care would not be expected to negotiate a 6-degree curve, especially if he knew of its existence or had adequate warning ”.
The proof of negligence, therefore, seems thin at best, but what is even more germane to the determination of this claim is that the court is totally without evidence as to how the accident occurred. In deciding the issue of negligence in this case, the court requires that the two basic elements of negligence be proved, viz, that a dangerous condition existed and that it was the proximate cause of the accident. While the burden of proof in a wrongful death case is recognized by the court to be a difficult one and that liberal construction should be applied to the plaintiff’s proof in such cases (Noseworthy v. City of New York, 298 N. Y. 76), this does not mean that speculation and conjecture are to be substituted for competent evidence of probative value even if circumstantial in nature. In the case at bar we have no evidence in the record of how this accident happened. It would be speculative to pinpoint the movements of the Rogers’ car prior to the collision. It would be speculative to suppose what caused its entrance into the wrong lane of traffic. It would be speculative to ascribe to his unknown movements before the collision a causal relation to the alleged conditions of negligence. Perhaps more light on the movements of the Rogers’ car before the collision could have been shed by Clifford, the driver of the other car, but he was never called as a witness in this trial by claimant. On the record as it stands, the court cannot perceive how the claimant’s burden of proof has been met. No proximate cause between the allegations of negligence and the collision has been shown.
In Maislin Bros. Transp. v. State of New York (15 A D 2d 853), which was a death action, the court pointed out, “ The accident was unwitnessed and there is no direct evidence as to what caused the vehicle to cross the highway and go over the embaule *170 ment. * * * When recovery must rest on circumstantial evidence, ‘ the inferences of negligence and proximate cause must be the only ones that can fairly and reasonably be deduced from the facts.’ (Boyce Motor Lines v. State of New York, 280 App. Div. 693, 696, affd. 306 N. Y. 801.) ”
On the state of the record the cause of the accident is left to conjecture and claimant has not sustained the burden of proof. The claim is dismissed.