Roshan L. MEHRA, as Administrator of the Goods, Chattels and Credits which were of Rajinder K. Mehra, Plaintiff-Appellant,

v.

Roberta BENTZ and Rudolph J. Bentz, Defendants-Appellees.

No. 330, Docket 75–7262.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1975.

Decided Dec. 30, 1975.

As Amended on Denial of Rehearing Feb. 5, 1976.

Alvin M. Feder, New York City (Feder, Kaszovitz & Weber, Murray L. Skala, New York City, of counsel), for appellant.

Thomas R. Newman, New York City (Bower & Gardner, Benjamin H. Siff, Richard V. Caplan, New York City, of counsel), for appellees.

Before MOORE, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

Following a jury verdict for plaintiff-appellant in the amount of $10,000 for conscious pain and suffering and $69,500 for wrongful death (of which $2,500 represented funeral expenses), defendants Roberta and Rudolph Bentz timely moved the trial court alternatively for judgment n. o. v. and a new trial pursuant to F.R.Civ.P. 50(b) and 59 respectively. This was the second trial in the case; the first trial ended in a jury verdict for defendants which was set aside, and a

new trial ordered by Judge Orrin G. Judd of the Eastern District of New York, on the grounds that the admission at trial of evidence that the decedent was insured under a $100,000 life policy in which his parents were the named beneficiaries constituted prejudicial error.

I.

The automobile accident which is the subject of this action occurred on April 5, 1972, at about 11:15 P.M. Earlier in the evening defendants Rudolph and Roberta Bentz (Mrs. Bentz was then Rudolph's fiancee, Roberta Liscza) had dined at the home of one of Rudolph's professors at Allentown College of St. Francis; Rudolph had two drinks sometimes before 7:30 P.M. and then consumed a beer with dinner, after which he had no other alcoholic beverages, only coffee.

On their way home, about 10:45 P.M., the Bentz's traveled over Route 309, an unlighted four-lane highway with a center divider and a low guard-rail on the outside of the shoulder, limiting pedestrians' access to the road. The surrounding area was countryside. The posted speed limit for Route 309 was 60 miles per hour. Rudolph Bentz was driving his then-fiancee's Volkswagen. His high beams were on and there were no other cars visible on the road. Bentz was approaching the apex of a hill which had a 15°-20° incline, when he suddenly saw a dark image in his windshield and heard a thud, after which his left windshield shattered. The car was not halted by the impact. Bentz remained in control of the vehicle, and brought it to a slow stop. He and his then-fiancee got out of the car, discussed what could have caused the impact, and flagged down a passing car. Two of the men in the second car went back up the hill to inspect the site and then reported to the Bentzes that they believed their car had run over a person who was now lying on the road. The decedent was pronounced dead at 12:10 A.M. by the local coroner; there is no evidence that he was conscious at any time after the accident. The coroner's analysis of decedent's blood revealed an alcohol content of .39%, which is indicative of severe intoxication and severe impairment of the motor and brain functions.

Although there was some question as to whether there was a dirt mark on defendant's left front bumper, the most prominent and undisputed damage to the car was: a large dent on the car's left fender, to the left of the front headlight; the broken windshield; and a broken antenna which was located on the same side. In other words, all of the damage was concentrated on the driver's side of the vehicle, in the vicinity of the left front wheel.

At the trial, the Bentzes testified that their car was traveling at 55 miles per hour, and that they had no advance warning of decedent's presence on the highway. There were no eyewitnesses to the accident.

II.

[redacted] Federal jurisdiction exists by virtue of the diverse citizenship of the parties (the decedent, New York; the defendants, Pennsylvania) and the sufficiency of the amount in controversy, 28 U.S.C. § 1332. Since this Court is sitting in diversity jurisdiction, it is incumbent upon us to apply the substantive law of New York to this action. *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). For purposes of *Erie* we treat as substantive the New York rules governing conflict of laws. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York law, while the law of Pennsylvania as the *lex loci*[1] would control

1. New York has adopted the "center of gravity" or "grouping of contacts" doctrine in determining which body of substantive law should apply to a tort action with multi-state contacts. *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); *Tooker v. Lopez*, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). In the circumstances of this case, we assume that application of this test would lead to the selection of Pennsylvania law as governing the plaintiff's substantive right of recovery.

the plaintiff-appellant's substantive right to recovery, the forum would apply its own law to matters of procedure, including weight and sufficiency of the evidence. In the case at bar appellant has challenged Judge Platt's finding[2] that there was no indication of negligence on appellees' part. Since this is a question of sufficiency of evidence, New York law governs the question.[2a]

In his opinion below, Judge Platt held that the evidence adduced at trial was insufficient as a matter of law to charge appellees with negligence. New York law squarely supports his conclusion.

■ The rule in New York is that, while inferences of negligence may be drawn from circumstantial evidence, those inferences must be the only ones which *reasonably could be drawn* from the evidence presented. If the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts.

[A] possibility of causation will not suffice to impress liability upon a defendant. Conjecture is not enough. A cause of action must be something more than a guess. *Kalinowski v.*

*Ryerson*, 242 A.D. 43, 45 [272 N.Y.S. 759] (4th Dept. 1934), *aff'd* 270 N.Y. 532 [200 N.E. 304] (1936) (quotation marks and citations omitted).

*Accord, Schwartz v. Macrose Lumber & Trim Co., Inc.*, 29 A.D.2d 781, 287 N.Y. S.2d 706 (2d Dept. 1969), *aff'd*, 24 N.Y.2d 856, 301 N.Y.S.2d 91, 248 N.E.2d 920 (1969); *Bearss v. Westbury Hotel, Inc.*, 33 A.D.2d 47, 304 N.Y.S.2d 894 (1st Dept. 1969). The same principle has been specifically extended to actions for wrongful death.[3]

In *Wank v. Ambrosino*, 307 N.Y. 321, 121 N.E.2d 246 (1954), the Court of Appeals was presented with a situation factually similar to the case at bar. The defendant's car struck and ran over plaintiff's intestate, fatally injuring him, although at the time of impact the defendant was unaware that he had hit a pedestrian. As in the present case, no one knew how the decedent came to be struck by the vehicle. Because we believe the case to be a statement by New York's highest court of the law applicable here, we quote from the Court's decision at length.

[T]he driver felt a bump, looked at the tires to see if one of them had gone flat, then started the car up again but, hearing more noise, again stopped the

2. Appellant also challenges Judge Platt's finding that the decedent was guilty of contributory negligence as a matter of law. Although there was ample evidence to support such a finding, it is unnecessary for us to review it on appeal, in light of our conclusions *infra* at pp. 1139–1140, respecting appellees' negligence.

Appellant additionally claims that Judge Platt failed to acknowledge Judge Judd's ruling which ordered a new trial as the law of the case. We need only note that in this Circuit, as appellant conceded at oral argument, the doctrine of the law of the case is a discretionary rule of practice. *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2d Cir. 1956), *reh. denied*, 231 F.2d 867 (1956).

2a. We assume, as did the parties until the filing by appellants of a petition for rehearing, that this question is to be decided by state rather than federal law. It is unnecessary for us to decide the issue, however, since we believe that application of federal law would lead to the same result. The question thus remains an open one in this circuit. See

*Calvert v. Katy Taxi, Inc.*, 413 F.2d 841, 846 (2d Cir. 1969); *Evans v. S. J. Groves & Sons Co.*, 315 F.2d 335, 342 n.2 (2d Cir. 1963). See also 5A Moore, Federal Practice ¶ 50.06. Much the same applies to appellant's contention that Pennsylvania law should be applied. Judge Platt, applying Pennsylvania law, reached the same conclusion that we reach applying the law of New York.

3. The Appellate Division stated in *Boyce Motor Lines v. State of New York*, 280 App.Div. 693, 117 N.Y.S.2d 289 (3d Dept. 1952), *aff'd* 306 N.Y. 801, 118 N.E.2d 819 (1954):

"Circumstantial evidence, of course, may support a verdict. The rule, however, is that the inferences of negligence and proximate cause must be the only ones that can fairly and reasonably be deduced from the facts. . . . The mere happening of the accident, even in a death case, created no presumption of liability against the State."
280 App.Div. at 696, 117 N.Y.S.2d at 291.

automobile and saw that, underneath it, was the body of plaintiff's intestate . . . .. The man died soon afterwards. Night had fallen at the time, but there were street lamps nearby. The driver heard no outcry and had not seen plaintiff's intestate before. No one knew how he had gotten underneath the car. . . .

An inference could be justified that defendants' car hit the man, but, since there is nothing at all to show how that came about, there is nothing on which to base a finding of negligent causation. True it is that "in a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence", *Noseworthy v. City of New York*, 298 N.Y. 76, 80, 80 N.E.2d 744, 746, but before that rule comes into play, there must be some showing of negligence, however slight. *Noseworthy*, and similar cases, describe a method of, or approach to, weighing evidence, but there must be a showing of facts from which negligence may be inferred. Here there was none. The statement by one witness that there were "drag marks" on the street was denied by another of plaintiff's witnesses who was equally positive that they were "tire marks". Only by a process of pure conjecture could such testimony be a basis for a verdict of negligence. 307 N.Y. at 323–4, 121 N.E.2d at 246.

■ We note that the plaintiff in *Wank* presented a case for recovery that was actually stronger than the one offered by appellant here. There was conflicting testimony in *Wank* by eyewitnesses, one of whom testified that there were "drag marks" leading to defendant's car, which would have indicated that defendant's vehicle was traveling at excessive speed.[4] In this case there were no eyewitnesses at all, and no testimony whatsoever suggesting that the defendants were operating their car in a negligent manner. Indeed, appellant could show nothing more than the fact that the decedent had met his death on the highway, and that there was reason to believe that the fatal impact occurred with defendants' car. This, as a matter of law, is insufficient to permit recovery. *Boyce Motor Lines v. State of New York, supra,* at n. 3.

The trial court in its opinion granted the n.o.v. motion relied upon, and quoted extensively from, two Pennsylvania cases. *Martin v. Marateck,* 345 Pa. 103, 27 A.2d 42 (1942) and *Auel v. White,* 389 Pa. 208, 132 A.2d 350 (1957). Appellant in his reply brief points to *Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 153 A.2d 477 (1959) as having "disapproved" the law of Pennsylvania as previously stated in its cases, including *Martin, supra.* This disapproval, however, was directed only to those cases in which several competing and reasonable inferences were available to the jury; the court in *Smith* held, in substance, that the decision as to which inference was the more reasonable was for the jury. But the court noted that "[I]t is the duty of plaintiff to produce substantial evidence which, if believed, warrants the verdict he seeks." *Smith, supra,* 153 A.2d at 480. In short, where there were "inferences reasonably deducible therefrom [the proof]" the judge should not substitute his judgment as to which inference should be drawn. But this is quite a different situation from that which confronted the trial judge here, namely, that *no* inference supporting liability could be drawn from the proof.

Accordingly, the judgment of the District Court is affirmed.

---

4. The Court in *Wank* also noted that:
    "The driver had a defect in the vision of his left eye, but there is nothing to show that it interfered with his safe operation of an automobile." 307 N.Y. at 323, 121 N.E.2d at 246.

This, too, provided more of an initial basis for considering defendant's negligence than is present in the case before us.