Russell G. Hunt, J.
This claim is to recover for damage by water to a building and personal property therein following the alleged negligence of the State in permitting a culvert under a State highway to become clogged and causing the water therein to back up and resulting in the loss sustained. The damage was discovered on the morning of October 8,1953, following almost three days of rain commencing on the morning of October 5, 1953 and terminating about midnight on October 7, during which time 1.53 inches of rain fell. The amount of damage having been agreed upon, the question tried was that relating to liability.
Claimant’s building is located on the east side of Broadway, a State highway in the village of Menands, Albany County. It is south about 30 feet from a State-constructed stone culvert under Broadway which terminates in a brick manhole. The manhole was constructed in 1946 at about the time claimant’s building was erected. Both were built by the same builder and when the building was sold to the claimant in 1946, the manhole and the land on which it was built were retained by the former. The builder connected the manhole to the culvert following a conference with representatives of the State at which the construction thereof was discussed. The culvert *930 carries the waters of the Maezlandtkill Creek from the west side of Broadway to the manhole on the easterly side thereof where they drop about two feet to the intake of a corrugated iron pipe at the bottom of the manhole; the pipe, three feet in diameter, runs easterly underground to the Hudson River. The manhole was constructed and the pipe was laid to replace an open channel which theretofore had carried off the waters of the creek across the builder’s adjacent lands.
Claimant’s theory was based upon an assumption that the backed up water was “full and tight” in the culvert and in the manhole, and, therefore, was under a “hydrostatic head” which forced water through the sides of the culvert into the ground, and, likewise through and between the bricks of the manhole, and that the escaping water flowed easterly from the culvert and westerly from the manhole into a trench carrying a village eight-inch water main adjacent to the sidewalk on the east side of the highway and about six feet below the surface, thence southerly for at least 30 feet to a point opposite the northwest corner of claimant’s building and from that point south, it was theorized, the water percolated from the trench east to the west wall of the building, a distance of eight and one-half feet, and seeped through cracks in the wall to the basement floor which was 9 to 10 feet below the surface of the ground.
It was established, however, that in 1950 a corrugated iron pipe, three feet in diameter, was inserted in the stone culvert, that it was sealed at both ends with cement, and, through openings in the ground overhead, wet cement was flushed over the pipe. Inspection on October 8, 1953 showed the pipe to have been in good condition and not defective, and, an inspection of the manhole at the same time showed the bricks and mortar were solid with no signs of seepage or leaking of water. It was also shown that while the village water line trench was but six feet below the ground surface, the top of the culvert midway across the highway was eight feet below the surface; at the point where the culvert was connected with the manhole, its top was thirteen and one-half feet below the surface of the ground and the bottom of the manhole was eighteen and one-half feet below ground level.
Upwards of six months before the claimant sustained the damage, the State’s general maintenance foreman had removed a worn out wire screen from in front of the west side intake to the culvert. This was one he had installed upwards of two years before, following complaints that debris was entering and blocking the culvert and manhole and causing the water to back up. A replacement was ordered, but had not been installed up *931 to the time of claimant’s damage. When the manhole was broken open and inspected on October 8, 1953 various kinds of debris were found and when removed, the impounded waters flowed out. The debris came through the culvert from the west side of the highway. While the waters of the creek had backed up in the manhole and in the culvert and behind the west side intake, the height of the water was below the intake on the west side and the street level and had not run over the sidewalk. The water in the manhole was from two to three feet below its top.
On the morning of October 8, 1953, the ground in front of claimant’s building was saturated and water ran down Gabrance Lane on the south side thereof, but the source of the latter was undisclosed. Water to a depth of three to four inches entered the basement of the building through the cracks in the west wall and the joint between the wall and the floor. The cracks in the wall were not caused by water pressure but were the result of shrinkage during the drying out process at the time the wall was constructed. The ground in front of the west wall pitched slightly towards it.
It is clear that the State failed in its duty to properly maintain the culvert, but, no liability can attach unless it appears that there was a causal connection between such negligence and the injury and the negligence charged was the proximate cause of the injury (Laidlaw v. Sage, 158 N. Y. 73, 94; Gibson v. State of New York, 187 Misc. 931, 937).
The difficulty in the claimant’s case lies in its inability to connect its damage to the failure of the State in the maintenance of the culvert, and to enter upon adjacent lands to preserve the free flow of the waters of Maezlandtkill Creek under the highway (Highway Law, § 45). For claimant to recover it is necessary that it show by a preponderance of the evidence that the waters of the creek found their way into the basement of the building. The only evidence the claimant offered to show the connection was the opinion of its expert. His opinion, however, is the expression of a theory which can be demonstrated only in the presence of an established factual basis and that basis did not exist here. There was no direct evidence that gave the expert an opportunity to apply the theory and such circumstantial evidence as existed was inadequate to remove the expert’s opinion from the realm of speculation and surmise (Gibson v. State of New York, supra, p. 939).
Unless the expert’s opinion is supported by the facts, that is, “ is based on a sound hypothesis it lacks probative force ” (Matter of Bonomi v. Poirier & MoLane Corp., 1 A D 2d 303, 305; Boyce Motor Lines v. State of New York, 280 App. Div. *932 693, affd. 306 N. Y. 801; Gibson v. State of New York, supra, p. 939).
There has been a failure of proof to sustain the claimant’s burden of establishing by a preponderance of the evidence that the negligence of the State was the cause of claimant’s damage. The claim must be dismissed. The decision, including findings of fact and conclusions of law, is filed herewith.